1

2

3

4

5

6

7

8                      IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JOHN EDWARD MITCHELL,

11          Plaintiff,                          No. 2:09-cv-3012 JAM KJN P

12      vs.

13   GOV. A. SCHWARZENEGGER,
     et al.,
14

15          Defendants.                 FINDINGS AND RECOMMENDATIONS

16   _____/

17   I.  Introduction

18              Plaintiff is a state prisoner, proceeding without counsel and in forma pauperis,

19   with an action filed pursuant to 42 U.S.C. § 1983.  On March 24, 2011, defendants filed a motion

20   to dismiss based on plaintiff's alleged failure to exhaust administrative remedies prior to filing

21   this action as to plaintiff's claims against defendant Durfey, Schwarzenegger, and Cate.  (Dkt.

22   No. 38.)  Defendants also allege that plaintiff failed to comply with the California Tort Claims

23   Act, and that plaintiff's factual allegations in claims three through seven fail to state cognizable

24   civil rights claims.  On April 25, 2011, plaintiff filed an unverified opposition, and on May 23,

25   2011, defendants filed a reply.  (Dkt. Nos. 41, 44.)  After review of the record, this court finds

26   that the motion to dismiss should be partially granted, and plaintiff's amended complaint should

1

1  be dismissed with leave to amend.

2  II.  Motion to Dismiss Based on Exhaustion

3  Defendants move to dismiss plaintiff's claims against defendants Durfey,

4  Schwarzenegger, and Cate, based on plaintiff's alleged failure to exhaust administrative remedies

5  prior to filing the instant action.

6  A.  Legal Standard re Exhaustion

7  The Prison Litigation Reform Act of 1995 ("PLRA") amended 42 U.S.C. § 1997e

8  to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C.

9  § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional

10 facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).

11 Exhaustion in prisoner cases covered by § 1997e(a) is mandatory.  Porter v. Nussle, 534 U.S.

12 516, 524 (2002).  Exhaustion is a prerequisite for all prisoner suits regarding conditions of

13 confinement, whether they involve general circumstances or particular episodes, and whether

14 they allege excessive force or some other wrong.  Porter, 534 U.S. at 532.

15 Exhaustion of all "available" remedies is mandatory; those remedies need not

16 meet federal standards, nor must they be "plain, speedy and effective."  Id. at 524; Booth v.

17 Churner, 532 U.S. 731, 740 n.5 (2001).  Even when the prisoner seeks relief not available in

18 grievance proceedings, notably money damages, exhaustion is a prerequisite to suit.  Booth, 532

19 U.S. at 741.  A prisoner "seeking only money damages must complete a prison administrative

20 process that could provide some sort of relief on the complaint stated, but no money."  Id. at 734.

21 The fact that the administrative procedure cannot result in the particular form of relief requested

22 by the prisoner does not excuse exhaustion because some sort of relief or responsive action may

23 result from the grievance.  See Booth, 532 U.S. at 737; see also Porter, 534 U.S. at 525 (purposes

24 of exhaustion requirement include allowing prison to take responsive action, filtering out

25 frivolous cases, and creating administrative records).

26 A prisoner need not exhaust further levels of review once he has either received

2

1  all the remedies that are "available" at an intermediate level of review, or has been reliably

2  informed by an administrator that no more remedies are available.  Brown v. Valoff, 422 F.3d

3  926, 934-35 (9th Cir. 2005).  Because there can be no absence of exhaustion unless some relief

4  remains available, a movant claiming lack of exhaustion must demonstrate that pertinent relief

5  remained available, whether at unexhausted levels or through awaiting the results of the relief

6  already granted as a result of that process.  Brown, 422 F.3d at 936-37.

7         As noted above, the PLRA requires proper exhaustion of administrative remedies.

8  Woodford v. Ngo, 548 U.S. 81, 83-84 (2006).  "Proper exhaustion demands compliance with an

9  agency's deadlines and other critical procedural rules because no adjudicative system can

10  function effectively without imposing some orderly structure on the course of its proceedings."

11  Id. at 90-91.  Thus, compliance with prison grievance procedures is required by the PLRA to

12  properly exhaust.  Id.  The PLRA's exhaustion requirement cannot be satisfied "by filing an

13  untimely or otherwise procedurally defective administrative grievance or appeal."  Id. at 83-84.

14         The State of California provides its prisoners the right to appeal administratively

15  "any departmental decision, action, condition or policy which they can demonstrate as having an

16  adverse effect upon their welfare."  Cal. Code Regs. tit. 15, § 3084.1(a) (2010).  It also provides

17  them the right to file appeals alleging misconduct by correctional officers and officials.  Id. at

18  § 3084.1(e).  In order to exhaust available administrative remedies within this system, a prisoner

19  must proceed through several levels of appeal: (1) informal resolution, (2) formal written appeal

20  on a 602 inmate appeal form, (3) second level appeal to the institution head or designee, and

21  (4) third level appeal to the Director of the California Department of Corrections and

22  Rehabilitation.  Barry v. Ratelle, 985 F.Supp. 1235, 1237 (S.D. Cal. 1997) (citing Cal.Code

23  Regs. tit. 15, § 3084.5).  A final decision from the Director's level of review satisfies the

24  exhaustion requirement under § 1997e(a).  Id. at 1237-38.

25         Non-exhaustion under § 1997e(a) is an affirmative defense which should be

26  brought by defendants in an unenumerated motion to dismiss under Federal Rule of Civil

3

1    Procedure 12(b).  Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).  Moreover, the court

2    may look beyond the pleadings to determine whether a plaintiff exhausted his administrative

3    remedies.  Id. at 1119-20.

4                    B.  Analysis re Exhaustion

5                    1.  Defendant Durfey

6            Plaintiff contends that his failure to protect claim against defendant Durfey was

7    exhausted by appeal CSP-S-08-03370,[1] in which plaintiff's only statement about defendant

8    Durfey is:  "During the escort, C/O Rosario guided petitioner securely by the elbow as Sergeant

9    Easterling and Durfy followed."  (Dkt. No. 38-3 at 4.)  In the "action requested" section, plaintiff

10   states:

11            C/O Rosario, after reviewing the Yard videotape that will clearly
             show inmate Mitchell made no resistance that required the
12           "excessive force" he used and after interviewing witnesses should
             be charged with felony assault and excessive force.
13

14   (Id.)  The appeal was treated as a staff complaint against defendant Rosario, and denied at the

15   third level of review.  (Dkt. No. 38-3 at 3.)

16           Defendants contend that this grievance is insufficient to put prison officials on

17   notice that defendant Durfey allegedly failed to protect plaintiff or that plaintiff maintained that

18   defendant Durfey acted, or failed to act, in a way plaintiff believed violated plaintiff's rights.

19   Plaintiff argues that defendant Durfey knew before plaintiff was handcuffed that plaintiff was to

20   be taken to administrative segregation ("ad seg"), yet failed to intervene or question why plaintiff

21   was not being escorted to ad seg, and was present while plaintiff was subjected to force.  (Dkt.

22   No. 41 at 6.)

23   _____

24       [1]  In the section before plaintiff argues exhaustion, plaintiff lists "relevant administrative
     appeals."  (Dkt. No. 41 at 5.)  In addition to 08-3370, plaintiff lists 08-3432, which addresses
25   plaintiff's August 5, 2005 placement in ad seg, but which does not involve defendant Durfey.
     (Dkt. No. 38-2.)  Plaintiff also references 08-3755, which involves plaintiff's challenge to the
26   CDC 115 Rules Violation Report dated August 5, 2008, which also does not involve defendant
     Durfey.  (Dkt. No. 38-5.)

1    For purposes of the PLRA's exhaustion requirement, "a grievance suffices if it

2  alerts the prison to the nature of the wrong for which redress is sought." Griffin v. Arpaio, 557

3  F.3d 1117, 1120 (9th Cir. 2009) (internal quotation marks omitted).

4    A grievance need not include legal terminology or legal theories
     unless they are in some way needed to prove notice of the harm

5    being grieved.  A grievance also need not contain every fact
     necessary to prove each element of an eventual legal claim.  The

6    primary purpose of a grievance is to alert the prison to a problem
     and facilitate its resolution, not to lay groundwork for litigation.

7

8  Id.  Ultimately, a grievance must "provide enough information . . . to allow prison officials to

9  take appropriate responsive measures." Id., 557 F.3d at 1121 (internal quotation marks omitted).

10  Therefore, a prisoner is not required to identify each named defendant in his administrative

11  appeals.  Irvin v. Zamora, 161 F. Supp. 2d 1125, 1135 (S.D. Cal. 2001) ("As long as the basic

12  purposes of exhaustion are fulfilled, there does not appear to be any reason to require a prisoner

13  plaintiff to present fully developed legal and factual claims at the administrative level.").

14  Department regulations require the prisoner to "describe the problem and the action requested."

15  Cal. Code Regs. tit. 15, § 30842.2(a).

16    Like the prisoner in El-Shaddai v. Wheeler, 2008 WL 410711 (E.D. Cal. Feb. 12,

17  2008), plaintiff did not suggest that other guards joined in the excessive force, or that any guard

18  stood by while plaintiff was subjected to force.  A liberal reading of plaintiff's grievance

19  demonstrates plaintiff was appealing defendant Rosario's use of force.  Plaintiff does not state

20  defendant Durfey witnessed the use of force or had an opportunity to stop the use of force but

21  failed to do so.  The facts provided by plaintiff in grievance CSP-S-08-03370 were not sufficient

22  to put prison officials on notice that plaintiff had a problem with defendant Durfey, or that

23  defendant Durfey acted wrongfully or failed to act in some way.  In any event, the appeal was

24  treated as a staff complaint against defendant Rosario, and no claim as to Durfey's role in the

25  incident was exhausted to the third level of review or in a staff complaint.  For all of these

26  reasons, plaintiff's claim against defendant Durfey is unexhausted and should be dismissed

1    without prejudice.

2              2.  Defendants Schwarzenegger and Cate

3              Defendants contend that none of the appeals accepted for review alleged

4    wrongdoing on the part of defendants Schwarzenegger and Cate.  Moreover, plaintiff failed to

5    articulate in any administrative appeal plaintiff's claims concerning "underground policies" that

6    permitted overcrowding, forced prisoners to cell with incompatible inmates, or negligently

7    supervised staff.  In his opposition, plaintiff concedes he did not exhaust these claims, arguing

8    these claims could not be exhausted because there are no superior officials over defendants

9    Schwarzenegger and Cate, so an administrative appeal would be "futile or moot."  (Dkt. No. 41

10   at 6.)

11             Plaintiff's argument is unavailing.  The PLRA is clear – an inmate may not file

12   suit in federal court until he exhausts all available administrative remedies.  42 U.S.C.

13   § 1997e(a).  Exhaustion is mandatory.  See Booth, 532 U.S. at 739, 741.  Booth confirmed that

14   "Congress meant to require procedural exhaustion regardless of the fit between a prisoner's

15   prayer for relief and the administrative remedies possible.  Id. at 739.  "[S]aying that a party may

16   not sue in federal court *until* the party first *pursues* all available avenues of administrative review

17   necessarily means that, if the party never pursues all available avenues of administrative review,

18   the person will never be able to sue in federal court."  Woodford, 548 U.S. at 100 (emphasis in

19   original).  Accordingly, plaintiff's claims against defendants Schwarzenegger and Cate must be

20   dismissed without prejudice based on plaintiff's failure to exhaust administrative remedies.

21             3.  Conclusion re Exhaustion

22             For all of the above reasons, plaintiff's claims against defendants Durfey,

23   Schwarzenegger and Cate should be dismissed without prejudice.

24   III.  State Tort Claims

25             In claims five and six, plaintiff alleges that defendants Rosario, Easterling,

26   Durfey, and Garcia violated the California State Tort Act by allegedly inflicting intentional

                                                          6

1    bodily injury and emotional distress.  Defendants provided certified documents from the

2    California Victim Compensation & Government Claims Board for plaintiff's claim G579737.

3    (Dkt. No. 38-15 at 2-42.)  Claim G579737 was rejected on February 26, 2009.  (Dkt. No. 38-15

4    at 3.)

5           Defendants contend that plaintiff's state tort claim failed to include plaintiff's

6    claim against defendant Durfey, and plaintiff failed to timely file the instant action within six

7    months after the February 26, 2009 rejection of plaintiff's state tort claims against defendants

8    Easterling and Rosario.  Finally, defendants contend that plaintiff's March 8, 2009 attempt to

9    amend the state tort claim to include plaintiff's claim against defendant Durfey, also fails because

10   plaintiff submitted the amendment after claim G579737 was rejected, and after the six month

11   limitations period for filing a claim expired, and plaintiff failed to seek leave to present a late

12   claim.  (Dkt. No. 38-1 at 19.)  In opposition, plaintiff appears to argue he should be entitled to

13   tolling while he exhausted his administrative remedies under the PLRA, citing Wright v. State of

14   California, 122 Cal. App. 4th 659, 19 Cal. Rptr. 3d 92 (2004).  (Dkt. No. 41 at 7.)

15          Before a state law claim can be brought in state or federal court, the California

16   Tort Claims Act requires that a claim against a public entity or its employees be presented to the

17   California Victim Compensation and Government Claims Board ("Board"), formerly known as

18   the State Board of Control, no more than six months after the cause of action accrues.  Cal. Govt.

19   Code §§ 905, 911.2, 945.4, 950.2; Hernandez v. McClanahan, 996 F.Supp. 975, 977 (N. D. Cal.

20   1998) (failure to present timely California tort claims bars plaintiff from bringing them in federal

21   suit).  If the claim is rejected, the claimant thereafter has six months to file a lawsuit.  Cal. Govt.

22   Code § 945.6.  While the district court has discretion to exercise jurisdiction over supplemental

23   state law claims, such discretion can only be exercised if the claim is timely brought under

24   California law.

25          Just as plaintiff's administrative appeal did not raise allegations against defendant

26   Durfey, neither did plaintiff's state tort claim G579737 submitted to the Board in December of

1   2008.  Thus, plaintiff failed to file a timely state tort claim as to defendant Durfey.  Plaintiff's

2   late efforts to amend the claim, on March 8, 2009 (dkt. no. 38-15 at 27), after claim G579737

3   was rejected, and more than six months after the cause of action accrued, do not salvage

4   plaintiff's state tort claim against defendant Durfey.  Plaintiff was informed that if he was

5   pursuing a claim later than six months, but prior to one year from the original incident, plaintiff

6   was required to apply for leave to present a late claim.  (Dkt. No. 38-15 at 6.)  Plaintiff was also

7   warned that the Board did not have jurisdiction for claims presented more than one year after the

8   original incident.  (Id.)  Plaintiff did not apply for leave to present a late claim.  (Dkt. No. 38-15.)

9          Moreover, plaintiff failed to timely file the instant supplemental state law claims

10  six months after claim G579737 was rejected on February 26, 2009.  Plaintiff was informed in

11  the February 26, 2009 rejection notice that plaintiff had "only six months from the date this

12  notice was personally delivered or deposited in the mail to file a court action on this claim."

13  (Dkt. No. 38-15 at 3.)  Thus, plaintiff's tort claim was due in state or federal court on or before

14  August 26, 2009.  Under the mailbox rule, the instant action was filed on October 13, 2009.  See

15  Houston v. Lack, 487 U.S. 266, 275-76 (1988) (pro se prisoner filing is dated from the date

16  prisoner delivers it to prison authorities).  Therefore, plaintiff's federal complaint was filed 48

17  days after the six month deadline expired.  Because defendants did not receive timely notice of

18  plaintiff's state law claims, plaintiff's state law claims should be dismissed, unless some form of

19  tolling applies.

20         While not entirely clear, it appears plaintiff seeks tolling based on his alleged

21  efforts to exhaust administrative remedies as required by the PLRA, relying on Wright.  (Dkt.

22  No. 41 at 6-7.)  However, the court in Wright addressed a demurrer based on Wright's failure to

23  exhaust administrative remedies as required under the PLRA.  Id.  Timeliness was not an issue.[2]

24

25         [2] Wright filed his complaint before he received the third level decision, but argued he had
26  "substantially complied" with the exhaustion requirement because the decision was overdue.  Id.,
    122 Cal. App. 4th at 667.  The court found there was no "substantial compliance" exception

1     Moreover, as argued by defendants, plaintiff is not entitled to tolling of the six

2 month court filing deadline pursuant to Uribe v. McKesson, 2011 WL 9640 (E.D. Cal. Jan. 3,

3 2011).  Uribe argued the six month filing deadline should be waived, but the court found that

4           neither a waiver nor an estoppel argument can relieve him from the
            untimeliness bar to his judicial pursuit of the state law claims.
5           Under California Government Code § 945.6(a)(1), the time within
            which to file a claim against a government entity or public
6           employee can be tolled in circumstances where the claimant can
            show surprise, mistake, or excusable neglect.  However, no such
7           facts can be used to extend the six-month statutory period after
            rejection of a claim within which a lawsuit must be filed.

8

9 Uribe, 2011 WL 9640 at *8 (citations omitted).  The court in Uribe partially relied on Martell v.

10 Antelope Valley Hosp. Med. Ctr., 67 Cal. App. 4th 978, 982, 79 Cal. Rptr.2d 329 (1998)

11 ("Where the notice of rejection complies with [the Act's requirements], the six-month statute of

12 limitations cannot be extended by provisions outside the Tort Claims Act.") (internal punctuation

13 and citations omitted).  Because the six month deadline cannot be extended, plaintiff's untimely-

14 filed state law claims contained in the fifth claim for relief must be dismissed.

15     As to the sixth claim for relief, however, defendants have not provided a rejection

16 notice for Claim No. G 579557.  Defendants provided a declaration from Associate

17 Governmental Program Analyst N. Wagner, who stated that the "search revealed that the only

18 claim responsive to this request is claim G 579737." (Dkt. No. 38-13 at 2.)  However, on

19 December 2, 2008, plaintiff signed a tort claim form against defendants Rosario and Garcia for a

20 November 3, 2008 incident (claim six), which is stamped with the number G 579557.  (Dkt. No.

21 38-15 at 37.)  Plaintiff pled the filing of claim G 579557.  (Dkt. No. 19 at 3.)  Thus, it is not clear

22 from this record whether plaintiff's claim was rejected.  Accordingly, defendants' motion to

23 dismiss claim six should be denied without prejudice.

24 ////

25

26 because under the PLRA, prisoners must first exhaust administrative remedies.  Id.

IV.   <u>Motion to Dismiss for Failure to State a Civil Rights Claim</u>

Defendants also move to dismiss plaintiff's claims, arguing that the allegations fail to state a cognizable claim under 42 U.S.C. § 1983.  In his March 4, 2010 amended complaint, plaintiff names thirteen defendants, and alleges various violations of the First, Eighth and Fourteenth Amendments and violations of due process.  The court need not address those defendants for whom plaintiff failed to first exhaust administrative remedies, defendants Durfey, Schwarzenegger and Cate, or plaintiff's fifth state law claim.[3]  The remaining defendants and claims will be addressed below.

Rule 12(b)(6) of the Federal Rules of Civil Procedures provides for motions to dismiss for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept as true the allegations of the complaint in question, <u>Erickson v. Pardus</u>, 551 U.S. 89 (2007), and construe the pleading in the light most favorable to the plaintiff.  <u>Jenkins v. McKeithen</u>, 395 U.S. 411, 421 (1969); <u>Meek v. County of Riverside</u>, 183 F.3d 962, 965 (9th Cir. 1999).  In order to survive dismissal for failure to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level."  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 554 (2007).  However, "[s]pecific facts are not necessary; the statement [of facts] need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  <u>Erickson</u>, 551 U.S. 89 (citations omitted).

A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief.  <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984); <u>Palmer v. Roosevelt Lake Log Owners Ass'n</u>, 651 F.2d 1289, 1294 (9th Cir. 1981).  In general, pro se

---

[3]  Similarly, the court need not reach defendants' claims to qualified immunity for those claims the court recommends dismissing.

1   pleadings are held to a less stringent standard than those drafted by lawyers.  Haines v. Kerner,

2   404 U.S. 519, 520 (1972).  The court has an obligation to construe such pleadings liberally.

3   Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc).  However, the court's

4   liberal interpretation of a pro se complaint may not supply essential elements of the claim that

5   were not pled.  Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).

6           A.  Claim Six

7               Defendants argue that there is no "California State Tort Act Cause of Action," and

8   that the alleged "violation of an unidentified 'state constitutional right' is not actionable.  While

9   defendants are correct, the court does not read plaintiff's amended complaint so technically.

10  Liberally construed, plaintiff alleges state law claims of intentional or negligent infliction of

11  emotional distress, and negligence in connection with the actions of defendants Rosario and

12  Garcia on November 3, 2008.

13              In claim six, plaintiff alleges defendants Rosario and Garcia "harassed the

14  plaintiff by placing mechanical restraints on [plaintiff] because of the plaintiff's prior complaints

15  for excessive force."  (Dkt. No. 19 at 12.)  Plaintiff alleges defendants "acted despicably,

16  knowingly, willfully, and maliciously, or with callous disregard for plaintiff's state rights."  (Id.)

17  In the body of the amended complaint plaintiff includes the following allegations:

18          On 11/3/08 plaintiff exited the dining hall past C/Os Rosario,
            Garcia and Freitas, plaintiff heard Rosario yell "Lock his ass up,
19          I'll stand over, that's the muthafucker I have to go to court about."
            Garcia stopped plaintiff and ordered him to a wall, he was
20          search[ed] and handcuffed, D. Rosario then told [plaintiff] to "take
            him to medical for a 7219."  C/O Freitas, "upon information and
21          belief" said "what did he do?" and went and told Lt. Bickham who
            stepped out of his office and ordered Garcia to bring plaintiff to his
22          office where he was questioned, C/O Rosario was also questioned.
            Lt. Bickham released the plaintiff and he returned to his cell. . . .
23

24  (Dkt. No. 19 at 6.)  These allegations are insufficient to state a claim for emotional distress or for

25  negligence.

26  ////

                                                  11

> The elements of a prima facie case of intentional infliction of emotional distress consist of:  (1) extreme and outrageous conduct by the defendant with the intent to cause, or reckless disregard for the probability of causing, emotional distress; (2) suffering of severe or extreme emotional distress by the plaintiff; and (3) the plaintiff's emotional distress is actually and proximately the result of the defendant's outrageous conduct.

Conley v. Roman Catholic Archbishop, 85 Cal.App.4th 1126, 1133 (2000).  To be "outrageous," conduct must be "so extreme as to exceed all bounds of that usually tolerated in a civilized community."  Cervantez v. J.C. Penney Co., 24 Cal.3d 579, 593 (1979).

> Ordinarily mere insulting language, without more, does not constitute outrageous conduct.  The Restatement view is that liability "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. . . .  There is no occasion for the law to intervene . . . where some one's feelings are hurt." (Rest.2d Torts, § 46, com. d.)  Behavior may be considered outrageous if a defendant (1) abuses a relation or position which gives him power to damage the plaintiff's interest; (2) knows the plaintiff is susceptible to injuries through mental distress; or (3) acts intentionally or unreasonably with the recognition that the acts are likely to result in illness through mental distress.  (Prosser, Law of Torts, supra, at pp. 57-58; Rest.2d Torts, § 46, coms. e, f.; Fletcher v. Western National Life Ins. Co. [1970], supra [10 Cal.App.3d 376], at p. 397 [89 Cal.Rptr. 78] (insurance agent's threatened and actual refusal to pay; threatening communication in bad faith to settle nonexistent dispute); Alcorn v. Anbro Engineering Inc., supra [2 Cal.3d], at p. 496 [86 Cal.Rptr. 88, 468 P.2d 216] (supervisor shouting insulting epithets; terminating employment; humiliating plaintiff); Golden v. Dungan [1971], supra [20 Cal.App.3d 295], at p. 305 [97 Cal.Rptr. 577] (process server knowingly and maliciously banging on door at midnight).)'"  (25 Cal.3d at pp. 946-947, 160 Cal.Rptr. 141, 603 P.2d 58.)

Cole v. Fair Oaks Fire Protection Dist., 43 Cal.3d 148, 155 n.7 (Cal. 1987).  The statement made by Rosario was not made to plaintiff; plaintiff "overheard" Rosario make it. (Dkt. No. 19 at 6.)  It is not uncommon in prison for foul language to be used, or for prisoners to be placed in mechanical restraints, whether or not the prisoner has filed prior complaints for excessive force.  None of the facts alleged by plaintiff demonstrate outrageous conduct, particularly in a prison setting.  Plaintiff fails to allege facts demonstrating defendants Rosario or Garcia inflicted emotional distress, intentionally or negligently, on plaintiff.

1      To the extent plaintiff intended to allege a separate state law negligence claim,

2  plaintiff similarly fails to state a cognizable claim.  A public employee is liable for injury to a

3  prisoner "proximately caused by his negligent or wrongful act or omission."  Cal. Gov't Code

4  § 844.6(d).  "In order to establish negligence under California law, a plaintiff must establish four

5  required elements: (1) duty; (2) breach; (3) causation; and (4) damages."  Ileto v. Glock Inc., 349

6  F.3d 1191, 1203 (9th Cir. 2003).  Plaintiff alleges no facts suggesting plaintiff can establish these

7  four elements.  Accordingly, plaintiff's sixth claim should be dismissed for failure to state a

8  cognizable claim.

9      B.  Alleged Verbal Harassment

10      Defendants contend that plaintiff's allegations of verbal harassment by

11  defendants Singh, Cappel, McGuire, and Fowler, in claim three are barred by Nunez v. City of

12  Los Angeles, 147 F.3d 867, 875 (9th Cir. 1998).  In opposition, plaintiff contends defendants

13  used verbal harassment to intimidate and "chill" plaintiff's First Amendment rights.  (Dkt. No.

14  41 at 8, 12.)

15      Neither verbal harassment nor threats state a § 1983 claim.  Oltarzewski v.

16  Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987) (directing vulgar language at inmate does not state a

17  constitutional claim).  In addition, threats are not sufficient adverse action to form the basis of a

18  retaliation claim.  Nunez, 147 F.3d at 875; Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987).

19  Accordingly, plaintiff fails to state a cognizable claim for verbal harassment, and defendants'

20  motion to dismiss plaintiff's verbal harassment claims against defendants Singh, Cappel,

21  McGuire, and Fowler should be granted.

22      C.  Alleged Eighth Amendment Violations

23      Defendants moved to dismiss plaintiff's allegations that his temporary placements

24  in ad seg and his subsequent transfer violated plaintiff's Eighth Amendment rights.  (Dkt. No.

25  38-1 at 28.)  However, defendants withdrew this argument in light of plaintiff's confirmation that

26  he is not raising this claim in the amended complaint.  (Dkt. No. 41 at 12.)

D. <u>Alleged Due Process Violations</u>

Instead, plaintiff claims the temporary placements in ad seg and his subsequent transfer violated plaintiff's due process rights.  (Dkt. No. 41 at 12.)  In claim three, plaintiff alleges that defendants Singh and Cappel authorized plaintiff's housing in ad seg after defendants McGuire and Fowler failed to persuade plaintiff to drop a retaliation complaint against defendants Rosario and Garcia.  In claim seven, plaintiff alleges defendants Bickham and Scavetta authorized plaintiff's housing in ad seg after plaintiff filed the first complaint for excessive force.  Plaintiff argues that in both instances, no guilty findings were made to justify plaintiff's housing in ad seg.  Defendants argue that "no controlling law establishes any liberty interest in avoiding temporary placement in administrative segregation, or transfer to another institution, away from harassing officers."  (Dkt. No. 44 at 11)

Plaintiff's efforts to cast these allegations as a violation of due process fail.  In <u>May v. Baldwin</u>, 109 F.3d 557, 565 (9th Cir. 1997), the Ninth Circuit found that May's temporary placement in ad seg pending a disciplinary hearing did not constitute a violation of due process because inmates have

> no liberty interest in freedom from state action taken within the sentence imposed <u>Sandin [v. Conner]</u>, 515 U.S. at ___, 115 S. Ct. at 2298 [1995] (quotation omitted), and the Ninth Circuit explicitly has found that administrative segregation falls within the terms of confinement ordinarily contemplated by a sentence.  <u>Toussaint v. McCarthy</u>, 801 F.2d 1080, 1091-92 (9th Cir. 1986).

<u>May</u>, 109 F.3d at 565.  Absent the existence of a protected liberty interest, plaintiff's due process claims fail.  <u>Wilkinson v. Austin</u>, 545 U.S. 209, 221 (2005); <u>Nunez</u>, 147 F.3d at 871.  Further, even if plaintiff could demonstrate a protected liberty interest existed, plaintiff fails to set forth any facts showing that he was denied the minimal procedural protections he was due under federal law, <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556 (1974), or that he was found guilty without "some evidence" supporting the finding, <u>Superintendent v. Hill</u>, 472 U.S. 445, 455-56 (1985).

In claim three, plaintiff alleges that he was "wrongfully transferred."  (Dkt. No. 19

1   at 9.)  However, inmates do not have a constitutional right to be housed at a particular facility or

2   institution, or to be transferred, or not transferred, from one facility or institution to another.

3   Olim v. Wakinekona, 461 U.S. 238, 244-48 (1983); Meachum v. Fano, 427 U.S. 215, 224-25

4   (1976); Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991) (per curiam).  Thus, plaintiff cannot

5   state a due process violation in connection with the transfer.

6          Accordingly, plaintiff's third and seventh claims that the temporary placements in

7   ad seg and his subsequent transfer violated plaintiff's due process rights should be dismissed.

8                          E.  Role in Inmate Grievance Process

9          In claim seven, plaintiff alleges defendants Bickham and Scavetta violated

10  plaintiff's due process rights based on their role in the inmate grievance process.  Specifically,

11  plaintiff alleges defendants Bickham and Scavetta failed to review or retain the video recording

12  of an incident on the yard where plaintiff claims excessive force was used, and failed to

13  adequately investigate plaintiff's claims.  Defendants move to dismiss this claim, arguing that

14  plaintiff has no protected liberty interest in the processing of his inmate appeal.

15         Plaintiff cites Howard v. U.S. Bureau of Prisons, 487 F.3d 808, 813-15 (10th Cir.

16  2007), and Piggie v. Cotton, 344 F.3d 674, 678-79 (7th Cir. 2003), in support of his arguments.

17  In both Howard and Piggie, the prisoners filed petitions for writ of habeas corpus relief,

18  challenging prison disciplinary decisions, and claiming that prison officials violated due process

19  rights during disciplinary proceedings.  Id.  In evaluating Howard's claim that the exclusion of

20  videotape evidence violated due process, the court applied Wolff, and found that Howard

21  "successfully alleged that the . . . refusal to produce and review the videotape prejudiced him

22  based on his allegations that the tape would show he acted in self-defense."  Id., 487 F.3d at 815.

23  The Tenth Circuit remanded the issue for the district court to determine whether the error was

24  harmless.  Id. at 815 n.5.  In Piggie, Piggie challenged the disciplinary board's refusal to view, or

25  to allow Piggie to watch, the videotape of the cell extraction.  Id., 344 F.3d at 678.  Piggie argued

26  the board turned off the tape after ten seconds, and when he objected, he was ushered out of the

1    room before he could point out the pertinent part of the video.  Id.  The Seventh Circuit found the

2    district court erred in not viewing the videotape in camera, and remanded the habeas petition

3    with instructions.  Id. at 680.

4          Unlike the prisoners in Howard and Piggie, plaintiff is not challenging prison

5    disciplinary proceedings.  Rather, plaintiff challenges defendants' actions taken on plaintiff's

6    inmate appeal.  No constitutional violation is shown based on the improper handling of an inmate

7    appeal, because prisoners have no stand-alone due process rights related to the administrative

8    grievance process.  See Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988) (a state's unpublished

9    policy statements establishing a grievance procedure do not create a constitutionally protected

10   liberty interest); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (holding that

11   there is no liberty interest entitling inmates to a specific grievance process).  Put another way,

12   prison officials are not required under federal law to process inmate grievances in a specific way

13   or to respond to them in a favorable manner.  Because there is no right to any particular grievance

14   process, plaintiff cannot state a cognizable civil rights claim for a violation of his due process

15   rights based on allegations that prison officials failed to view or retain the videotape or to

16   properly investigate plaintiff's claims.[4]  Therefore, plaintiff's due process claims against

17   defendants Bickham and Scavetta in claim seven should be dismissed for failure to state a

18   cognizable civil rights claim.

19          F.  Plaintiff's Fourth Claim

20          Aside from plaintiff's allegations against defendants Schwarzenegger and Cate,

21   dismissed for failure to first exhaust administrative remedies, plaintiff alleges defendants Warden

22   Haviland and Associate Warden Singh violated plaintiff's First Amendment right to be free from

23   adverse actions that chilled his right to file a staff complaint, and were "deliberately indifferent"

24

25          [4]  However, plaintiff's access to the videotape is still relevant to plaintiff's claims alleging
     excessive force.  Plaintiff simply cannot raise a stand-alone due process claim based on the
26   alleged failure to provide access to the videotape during the grievance process.

1    by retaining plaintiff in ad seg and transferring him to a different prison.  (Dkt. No. 19 at 11.)

2    Plaintiff also alleges defendants Haviland and Singh violated plaintiff's "Eighth Amendment

3    right to have personal safety."  (Id.)

4              i.  Alleged Eighth Amendment Violation

5              Plaintiff appears to argue that defendants Haviland and Singh risked plaintiff's

6    safety because, despite receiving plaintiff's "legal points and authorities" informing them that

7    plaintiff claimed his retention in ad seg and subsequent transfer was based on plaintiff filing a

8    staff complaint in violation of plaintiff's First Amendment rights, defendants Haviland and Singh

9    retained plaintiff in ad seg and endorsed plaintiff for transfer.

10             Prison officials are required to take reasonable measures to guarantee the safety of

11   inmates and officials have a duty to protect prisoners from violence.  Farmer v. Brennan, 511

12   U.S. 825, 832-33 (1994).  To state a claim for threats to safety or failure to protect, an inmate

13   must allege facts to support that he was incarcerated under conditions posing a substantial risk of

14   harm and that prison officials were "deliberately indifferent" to those risks.  Farmer, 511 U.S. at

15   834.  To adequately allege deliberate indifference, a plaintiff must set forth facts to support that a

16   defendant knew of, but disregarded, an excessive risk to inmate safety.  Farmer, 511 U.S. at 837.

17   That is, "the official must both [have been] aware of facts from which the inference could be

18   drawn that a substantial risk of serious harm exist[ed], and he must also [have] draw[n] the

19   inference."  Farmer, 511 U.S. at 837.

20             Plaintiff has alleged no facts demonstrating his personal safety was put at risk by

21   his retention in ad seg or by his subsequent transfer, or that defendants Haviland and Singh acted

22   in deliberate indifference to plaintiff's safety.  Thus, plaintiff's allegations in claim four are

23   insufficient to state an Eighth Amendment violation and should be dismissed.

24             ii.  Alleged Retaliation

25             Plaintiff alleges defendants Haviland and Singh retaliated against plaintiff by

26   retaining plaintiff in ad seg and transferring him to a different prison.  Plaintiff appended a copy

17

of the February 26, 2009 classification chrono signed by defendants Haviland and Singh

retaining plaintiff in ad seg pending his transfer.  (Dkt. No. 19 at 50.)  Plaintiff states he appeared

before another classification committee, headed by defendant Haviland, on March 5, 2009, and

was transferred to a different prison on April 28, 2009.  (Dkt. No. 19 at 7.)

    In the prison context, allegations of retaliation against a prisoner's First

Amendment rights to speech or to petition the government may support a section 1983 claim.

Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985).  "[A] viable claim of First Amendment

retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse

action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action

(4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not

reasonably advance a legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68

(9th Cir. 2005).  Direct and tangible harm will support a First Amendment retaliation claim even

without demonstration of chilling effect on the further exercise of a prisoner's First Amendment

rights.  Id. at 568, n.11.  "[A] plaintiff who fails to allege a chilling effect may still state a claim if

he alleges he suffered some other harm" as a retaliatory adverse action.  Brodheim v. Cry, 584

F.3d 1262, 1269 (9th Cir. 2009), citing Rhodes, 408 F.3d at 568 n.11.  A plaintiff must plead

facts which suggest that retaliation for the exercise of protected conduct was the "substantial" or

"motivating" factor behind the defendant's conduct.  Soranno's Gasco, Inc. v. Morgan, 874 F.2d

1310, 1314 (9th Cir. 1989).  An allegation of retaliation against a prisoner's First Amendment

right to file a prison grievance is sufficient to support a claim under section 1983.  Bruce v. Ylst,

351 F.3d 1283, 1288 (9th Cir. 2003).  However, mere conclusions of hypothetical retaliation will

not suffice; rather, a prisoner must "allege specific facts showing retaliation because of the

exercise of the prisoner's constitutional rights."  Frazier v. Dubois, 922 F.2d 560, 562 n.1 (10th

Cir. 1990).

    It appears plaintiff's retaliation claims against defendants Haviland and Singh in

connection with plaintiff's retention in ad seg on February 26, 2009, pending his transfer are

1   unavailing.  Plaintiff provided a copy of the February 26, 2009 classification chrono which states

2   that plaintiff was retained in ad seg pending transfer based on plaintiff's alleged threat to have

3   defendant Rosario fired, and defendant Rosario's statement that he was "being placed in an

4   unsafe work environment" due to plaintiff's alleged threat.  (Dkt. No. 19 at 50.)  Thus, the

5   retention and transfer advanced the legitimate correctional goal of removing plaintiff from

6   defendant Rosario's work environment.  Therefore, it does not appear that plaintiff can state a

7   retaliation claim against defendants Haviland and Singh for their actions on February 26, 2009.

8   See Ngo v. Rawers, 2011 WL 719607 (E.D. Cal. 2011) (plaintiff failed to show a material fact

9   dispute as to whether his placement in ad seg was narrowly tailored to serve a legitimate

10   correctional goal.)  The Ninth Circuit has found that "preserving institutional order, discipline,

11   and security are legitimate penological goals."  Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir.

12   1994) ("Barnett's reclassification served the legitimate penological purpose of maintaining

13   prison discipline.").  "[M]aintaining the integrity of an investigation into serious institutional

14   misconduct is a legitimate penological interest."  Bryant v. Cortez, 536 F.Supp. 2d 1160, 1169

15   (C.D. Cal. 2008); see also Draper v. Harris, 245 Fed. App'x 699, 701 (9th Cir. 2007) ("Draper

16   failed to raise a triable issue as to whether his placement in administrative segregation pending

17   the investigation of his complaints did not advance a legitimate penological goal.").

18          However, in an abundance of caution, this claim should be dismissed with leave

19   to amend should plaintiff be able to plead a cognizable retaliation claim.

20          G.  Plaintiff's Remaining Claims

21          Plaintiff's first and second claims state cognizable civil rights claims based on

22   allegations of excessive force against defendants Rosario and Easterling, and retaliation by

23   defendants Rosario and Garcia.  Plaintiff should renew these claims in any second amended

24   complaint.

25          To the extent plaintiff believes he can allege facts that state a cognizable

26   retaliation claim against defendants Haviland and Singh, as set forth above, plaintiff may include

1    that claim in any second amended complaint.

2           Plaintiff's efforts to allege retaliation claims against defendants McGuire, Fowler,

3    Bickham and Scavetta, raised in claims three and seven remain.  In his amended complaint,

4    plaintiff attempts to tie many of his claims to an alleged violation of his First Amendment rights,

5    allegedly in retaliation for plaintiff filing a staff complaint alleging excessive force.  However, it

6    is difficult to parse plaintiff's retaliation claims[5] because he intersperses them with various

7    noncognizable civil rights claims, as addressed above.

8           Moreover, documents reflecting that plaintiff exhausted his retaliation claims

9    suggest that plaintiff was placed in ad seg for legitimate correctional goals.  Ngo, 2011 WL

10   719607 at *4.  Defendant Scavetta denied plaintiff's appeal at the second level, and stated

11   plaintiff was placed in ad seg on August 5, 2008, for "resisting staff requiring the use of force,"

12   for which plaintiff received a rules violation report #S1-08-08-1142.  (Dkt. No. 38-4 at 2.)

13   Scavetta stated that the rules violation was adjudicated on September 16, 2008, and plaintiff was

14   found guilty and assessed 90 days loss of credits.  (Id.)  Scavetta stated plaintiff was returned to

15   ad seg on August 16, 2008, after plaintiff made a staff complaint, allegedly "to protect the

16   integrity of an ongoing investigation against staff."  (Dkt. 38-4 at 3.)  These statements suggest

17   plaintiff was placed in ad seg for legitimate penological purposes.

18          However, because plaintiff pled his retaliation claims in the context of other

19   alleged constitutional violations, it is unclear whether plaintiff can state cognizable retaliation

20   claims against defendants McGuire, Fowler, Bickham and Scavetta, demonstrating his placement

21   or placements in ad seg in August of 2008, were in retaliation for filing a staff complaint, or that

22   their actions did not reasonably advance a legitimate correctional goal.  Therefore, plaintiff's

23   amended complaint should be dismissed with leave to amend should plaintiff be able to allege

24   _____

25        [5]  Because of this difficulty, the court declines to address defendants' argument that they
     are entitled to qualified immunity on some of plaintiff's retaliation claims.  However, the denial
26   of defendants' motion to dismiss plaintiff's retaliation claims is without prejudice to renewal, if
     appropriate, following the filing of the second amended complaint.

1  sufficient retaliation claims against defendants McGuire, Fowler, Bickham and Scavetta.[6]

2  However, plaintiff should only name those defendants responsible for the allegedly wrong

3  placement, not any defendant who allegedly verbally harassed or threatened plaintiff.  Plaintiff

4  should raise any retaliation claim solely as a retaliation claim, without reference to other

5  constitutional violations the court has found fail to state a cognizable civil rights claim, as set

6  forth above.

7         In addition, plaintiff is hereby informed that the court cannot refer to a prior

8  pleading in order to make plaintiff's second amended complaint complete.  Local Rule 220

9  requires that an amended complaint be complete in itself without reference to any prior pleading.

10  This requirement exists because, as a general rule, a second amended complaint supersedes the

11  amended complaint.  See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Once plaintiff files a

12  second amended complaint, the amended complaint no longer serves any function in the case.

13  Therefore, in a second amended complaint, as in an original complaint, each claim and the

14  involvement of each defendant must be sufficiently alleged.

15         Plaintiff is not required to file a second amended complaint.  If plaintiff so

16  chooses, he may proceed on claims one and two in the presently operative amended complaint.

17  (Dkt. No. 19.)  If plaintiff chooses to file a second amended complaint, however, he should not

18  name defendants Durfey, Schwarzenegger and Cate, or renew any of the claims dismissed

19  pursuant to these findings and recommendations.

20  V.  Conclusion

21         Accordingly, IT IS HEREBY RECOMMENDED that:

22         1.  Defendants' March 24, 2011 motion to dismiss (dkt. no. 38) be granted in part

23  and denied in part, as follows:

24  ////

25  _____

26       [6]  These claims were exhausted by plaintiff's grievance 08-03432.  (Dkt. No. 38-1 at 14.)

         a.  Defendants Durfey, Schwarzenegger and Cate be dismissed based on plaintiff's failure to exhaust administrative remedies;

         b.  Plaintiff's state law claims contained in claim five be denied as untimely-filed;

         c.  Defendants' motion to dismiss plaintiff's state law claims contained in claim six be denied without prejudice;

         d.  Plaintiff's verbal harassment claims against defendants Singh, Cappel, McGuire and Fowler be dismissed;

         e.  Plaintiff's due process claims against defendants Singh, Cappel, Bickham and Scavetta, in claims three and seven, be dismissed;

         f.  Plaintiff's claims against defendants Bickham and Scavetta based on their role in the inmate grievance process, contained in claim seven, be dismissed;

         g.  In all other respects, defendants' motion to dismiss be denied without prejudice;

       2.  Plaintiff's state law claims contained in claim six be dismissed for failure to state a claim;

       3.  Plaintiff's Eighth Amendment claim against defendants Haviland and Singh in claim four be dismissed;

       4.  Plaintiff's amended complaint be dismissed with leave to file a second amended complaint; and

       5.  Plaintiff be permitted thirty days after service of the district judge's order adopting these findings and recommendations to file a second amended complaint that conforms to the standards set forth herein; should plaintiff fail to timely file such second amended complaint, this action shall proceed solely on claims one and two of the amended complaint (Dkt. No. 19).

////

1         These findings and recommendations are submitted to the United States District

2    Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

3    one days after being served with these findings and recommendations, any party may file written

4    objections with the court and serve a copy on all parties.  Such a document should be captioned

5    "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

6    objections shall be filed and served within fourteen days after service of the objections.  The

7    parties are advised that failure to file objections within the specified time may waive the right to

8    appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

9    DATED:  October 14, 2011

10

11

12   KENDALL J. NEWMAN
     UNITED STATES MAGISTRATE JUDGE

13   /mitc3012.mtd

14

15

16

17

18

19

20

21

22

23

24

25

26