1

2

3

4

5

6

7

8               IN THE UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JOHN EDWARD MITCHELL,

11            Plaintiff,                    No. 2:09-cv-3012 JAM KJN P

12        vs.

13   J. HAVILAND, et al,

14            Defendants.            FINDINGS AND RECOMMENDATIONS

15   _____/

16   I.  Introduction

17            Plaintiff is a state prisoner, proceeding without counsel and in forma pauperis,

18   with an action filed pursuant to 42 U.S.C. § 1983.  This action is proceeding on plaintiff's Eighth

19   Amendment claims for excessive force against defendants Rosario and Easterling, and First

20   Amendment retaliation claims against defendants Rosario, Garcia, Bickham, McGuire, Cappel,

21   Singh, and Haviland.  (Dkt. Nos. 45, 53.)  Defendant Easterling moves to dismiss plaintiff's

22   excessive force claim on the ground that plaintiff's claim is barred by Edwards v. Balisok, 520

23   U.S. 641, 646 (1997).  In addition, defendants Bickham, McGuire, Cappel, Singh, and Haviland

24   move to dismiss plaintiff's retaliation claims for failure to state a claim, or, in the alternative,

25   because defendants are entitled to qualified immunity.  As set forth more fully below, this court

26   finds that the motion to dismiss should be granted in part, and denied in part.

1

1  II.  <u>Legal Standard for Motion to Dismiss</u>

2        Rule 12(b)(6) of the Federal Rules of Civil Procedures provides for motions to

3  dismiss for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

4  In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the

5  court must accept as true the allegations of the complaint in question, <u>Erickson v. Pardus</u>,

6  551 U.S. 89 (2007), and construe the pleading in the light most favorable to the plaintiff.  <u>Jenkins</u>

7  <u>v. McKeithen</u>, 395 U.S. 411, 421 (1969); <u>Meek v. County of Riverside</u>, 183 F.3d 962, 965 (9th

8  Cir. 1999).  Still, to survive dismissal for failure to state a claim, a pro se complaint must contain

9  more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements

10  of a cause of action."  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555-57 (2007).  In other

11  words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

12  statements do not suffice."  <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009).  Furthermore, a

13  claim upon which the court can grant relief must have facial plausibility.  <u>Twombly</u>, 550 U.S. at

14  570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

15  court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

16  <u>Iqbal</u>, 129 S. Ct. at 1949.  Attachments to a complaint are considered to be part of the complaint

17  for purposes of a motion to dismiss for failure to state a claim.  <u>Hal Roach Studios v. Richard</u>

18  <u>Feiner & Co.</u>, 896 F.2d 1542, 1555 n.19 (9th Cir.1990).

19        A motion to dismiss for failure to state a claim should not be granted unless it

20  appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which

21  would entitle him to relief.  <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984).  In general, pro

22  se pleadings are held to a less stringent standard than those drafted by lawyers.  <u>Haines v. Kerner</u>,

23  404 U.S. 519, 520 (1972).  The court has an obligation to construe such pleadings liberally.

24  <u>Bretz v. Kelman</u>, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc).  However, the court's

25  liberal interpretation of a pro se complaint may not supply essential elements of the claim that

26  were not pled.  <u>Ivey v. Bd. of Regents of Univ. of Alaska</u>, 673 F.2d 266, 268 (9th Cir. 1982).

1    In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court "may

2  generally consider only allegations contained in the pleadings, exhibits attached to the complaint,

3  and matters properly subject to judicial notice." Outdoor Media Group, Inc. v. City of

4  Beaumont, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted).  However,

5  under the "incorporation by reference" doctrine, a court may also review documents "whose

6  contents are alleged in a complaint and whose authenticity no party questions, but which are not

7  physically attached to the [plaintiff's] pleading." Knievel v. ESPN, 393 F.3d 1068, 1076 (9th

8  Cir. 2005) (citation omitted and modification in original).  The incorporation by reference

9  doctrine also applies "to situations in which the plaintiff's claim depends on the contents of a

10 document, the defendant attaches the document to its motion to dismiss, and the parties do not

11 dispute the authenticity of the document, even though the plaintiff does not explicitly allege the

12 contents of that document in the complaint." Id.

13
14
15
16
17
18
19
20
21
> In considering a Rule 12(b)(6) motion, a district court generally may not take into account material beyond the complaint.  Intri-Plex Technologies, Inc. v. Crest Group, Inc., 499 F.3d 1048, 1052 (9th Cir. 2007).  However, there are exceptions to the general rule. Under the "incorporation by reference" doctrine, we may consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir 2005) (alteration in original) (internal quotation marks omitted); see also Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322, 127 S. Ct. 2499, 168 L. Ed.2d 179 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.").

22 Dunn v. Castro, 621 F.3d 1196, 1205 n.6 (9th Cir. 2010).

23 III.  Alleged Excessive Force Claim - Defendant Easterling

24    In the second amended complaint, plaintiff alleges that on August 5, 2008,

25 Correctional Officer Presto informed plaintiff that he would have to take a cellmate; plaintiff

26 declined, and asked to be placed in administrative segregation ("ad seg") instead.  (Dkt. No. 51 at

3.)  Correctional Officer Presto left and returned to his office.  Minutes later, defendants Rosario,

Easterling, and Durfey came into plaintiff's cell.  (Id. at 4.)  Defendant Easterling allegedly asked

plaintiff if he refused a cellmate, and plaintiff said yes, and requested placement in ad seg.

Plaintiff was handcuffed and escorted out of the building by defendant Rosario.  Defendants

Easterling and Durfey exited through a side door and met up with plaintiff and defendant Rosario

in the yard.  When plaintiff realized he was not being taken to ad seg, but was being taken to

another building, plaintiff turned his head toward defendant Easterling and said, "please don't try

to force me into a cell, [I] asked to go to ad seg."  (Id.)  Plaintiff alleges that defendant Rosario

then said, "he's resisting, take him down?"  (Id.)  Plaintiff claims defendant Easterling

responded:  "take him down, now you're going to ad seg."  (Id.)

   Plaintiff alleges defendant Easterling pressed his alarm button, and claims

defendant Rosario used excessive force in taking plaintiff to the ground.  (Id.)  Plaintiff claims he

suffered injuries to his left shoulder and back.  (Id. at 4, 7.)  Plaintiff alleges defendant

Easterling's order to use force was "unnecessary."  (Id. at 7.)

   Plaintiff received a Rules Violation Report ("RVR") S1-08-08-1142-R for

"Resisting Staff Resulting in the Use of Force."  (Dkt. No. 54-3 at 3-6.)[1]  Plaintiff was found

guilty at a disciplinary hearing, based on the findings and plaintiff attempted to break free from

defendant Rosario's escort by abruptly stopping and trying to spin away, necessitating the use of

force to gain control of plaintiff.  Plaintiff was assessed a credit for forfeiture of ninety days.

(Id.)

   A.  Favorable Termination Rule

   A state prisoner's § 1983 claim is not cognizable if success on the claim would

necessarily imply the invalidity of a still-valid sentence or disciplinary finding that affects the

---

[1]  Defendants' request to take judicial notice of the RVR is granted.  Dunn, 621 F.3d at 1205 n.6.  Plaintiff attached a partial copy of the RVR to his first amended complaint.  (Dkt. No. 19 at 29-30.)  Plaintiff also provided a partially illegible copy of the RVR with an earlier supplemental complaint.  (Dkt. No. 9 at 27-32.)

length of his incarceration.  Heck v. Humphrey, 512 U.S. 477, 486-87 (1994).  Consequently, a prisoner's § 1983 challenge to disciplinary hearing procedures is barred if judgment in his favor would necessarily imply the invalidity of the resulting loss of good-time credits.  Edwards, 520 U.S. at 646 (dismissing § 1983 action for declaratory relief and monetary damages because successful challenge to procedures used in disciplinary hearing would necessarily imply the invalidity of the punishment imposed).  See also Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005) (explaining that "a state prisoner's § 1983 action is barred (absent prior invalidation) no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings), if success in that action would necessarily demonstrate the invalidity of confinement or its duration" (emphasis omitted)).  Put another way, a § 1983 claim is barred if the "plaintiff could prevail only by negating 'an element of the offense of which he has been convicted.'"  Cunningham v. Gates, 312 F.3d 1148, 1153-54 (9th Cir. 2002) (citing Heck, 512 U.S. at 487 n.6).  However, when the § 1983 claim does not necessarily implicate the underlying disciplinary action (or criminal conviction), it may proceed.  See Muhammad v. Close, 540 U.S. 749, 751, 754-55 (2004) (Heck does not bar a prisoner's § 1983 suit when a favorable verdict would not affect his disciplinary conviction.)

           B.  Analysis

           In this case, plaintiff claims that defendant Easterling authorized defendant Rosario's use of force on August 5, 2008, but that the order to use force was unnecessary.  (Dkt. No. 51 at 4, 7.)  Plaintiff's allegation that the use of force was unnecessary contradicts the findings of the disciplinary hearing, where it was determined that petitioner's resistive actions necessitated the use of force.  Therefore, any finding that no force was required would negate the resisting staff element of the disciplinary charge, thus invalidating the disciplinary conviction, and would negate the loss of good time credits.  See Cunningham, 312 F.3d at 1153-54 ("an important touchstone is whether a § 1983 plaintiff could prevail only by negating 'an element of the offense of which he has been convicted.")

1    In opposition, plaintiff does not dispute the nature of his claim against defendant

2 Easterling, but argues that this claim is not barred because plaintiff did not seek to expunge the

3 RVR or to reinstate his time credits.[2]  (Dkt. No. 55 at 3.)  Plaintiff also argues that because he is a

4 three strikes inmate serving an indeterminate sentence of 85 years to life, he is not entitled to

5 receive prison conduct credits.  (Id. at 4.)

6    However, because plaintiff's claim necessarily implies the invalidity of the

7 disciplinary conviction, the nature of the relief sought cannot avoid the Edwards bar.  Wilkinson,

8 544 U.S. at 81-82.  In other words, whether or not plaintiff seeks to reinstate his time credits, and

9 whether or not plaintiff was entitled to earn such credits, is of no consequence here.  Resolution

10 of plaintiff's claim against defendant Easterling would implicate an element of the offense

11 underlying the disciplinary conviction, and therefore is barred by Edwards, 520 U.S. at 646,

12 regardless of the relief sought in this action.

13    Accordingly, defendant Easterling's motion to dismiss should be granted, and

14 plaintiff's excessive force claim should be dismissed without prejudice.[3]

15 IV.  Alleged Retaliation - Bickham, McGuire, Cappel, Singh, and Haviland

16    A.  Plaintiff's Allegations - Verified Second Amended Complaint

17    In the operative complaint, plaintiff alleges he was placed in ad seg on August 5,

18 2008, and on August 14, 2008, plaintiff transferred from ad seg to yard one.  (Dkt. No. 51 at 5.)

19 The next day, plaintiff told Sgt. Henry that plaintiff wanted to file an excessive force complaint

20 concerning the August 5, 2008 incident.  On August 16, 2008, plaintiff filed an administrative

21 appeal claiming an excessive use of force on August 5, 2008.  (Dkt. No. 38-3 at 4.)  That same

22 day, plaintiff was called to the office by defendant Bickham and Sgt. Henry, and plaintiff alleges

23 defendant Bickham told plaintiff that if he continued with the excessive force complaint, plaintiff

24

25    [2]  Plaintiff also concedes that he is challenging the validity of the prison disciplinary in
Mitchell v. Adams, Case No. 1:10-cv-1342 (E.D. Cal.).  (Dkt. No. 55 at 4.)

26    [3]  However, plaintiff's alleged excessive force claim against defendant Rosario remains.

1  would be placed in ad seg for a ninety-day investigation.  Plaintiff declined to withdraw the

2  complaint, was questioned by Sgt. Henry, and videotaped by Sgt. D. Burris, and then escorted to

3  ad seg.

4           On October 23, 2008, plaintiff alleges he was released from ad seg, but that

5  Correctional Officer Mata attempted to escort plaintiff to a gym where plaintiff feared he would

6  be assaulted by inmates who were told that plaintiff was a snitch.  Plaintiff sat down, and

7  plaintiff alleges Sgt. Orrick told Mata to return plaintiff to ad seg.

8           On November 2, 2008, plaintiff was released to yard one.  The next day, as

9  plaintiff exited the dining hall, defendant Rosario allegedly said, "Lock his ass up, I'll stand over,

10 that's the muthafucker I have to go to court about." (Dkt. No. 51 at 5.)  Defendant Garcia

11 allegedly stopped plaintiff and ordered him to a wall, and searched and handcuffed plaintiff.

12 Defendant Rosario then allegedly said, "take him to medical for a 7219." (Id.)  Plaintiff alleges

13 Correctional Officer Freitas asked "what did he do," and then went and told defendant Bickham,

14 who ordered defendant Garcia to bring plaintiff to Bickham's office.  Plaintiff alleges he and

15 defendant Rosario were questioned, and plaintiff was released to his cell, where plaintiff alleges

16 he filed complaint 08-3956 on November 3, 2008.[4]

17          On February 16, 2009, plaintiff was called to the program office by defendant

18 McGuire as to complaint 08-3956, where McGuire allegedly asked whether plaintiff wanted

19 money; plaintiff allegedly responded that he wanted to make sure defendant Rosario no longer

20 hurt anyone else, and that plaintiff would not drop the complaint.  (Dkt. No. 51 at 6.)  Defendant

21 McGuire allegedly responded that plaintiff "will leave the yard before my officer does." (Id.)

22          After returning to his cell, plaintiff alleges Sgt. Fowler called plaintiff back to the

23 program office, where plaintiff was again asked about complaint 08-3956.  Plaintiff alleges that

24

---

25     [4]  A copy of plaintiff's appeal 08-03956 was submitted in support of defendants' prior
   motion to dismiss for failure to exhaust administrative remedies, and is located at Dkt. No. 38-9
26 at 6.  It appears that Appeal 08-03956 was signed by plaintiff on November 8, 2008.  (Id.)

1   during this meeting, Sgt. Fowler allegedly reminded plaintiff that he was with plaintiff at Salinas

2   Valley State Prison during all the "Green wall stuff," and allegedly said that Fowler and

3   defendant Rosario were "homeboys."  (Id.)  Plaintiff told Sgt. Fowler that he had a right to file a

4   complaint and would not drop it.  Plaintiff was told to return to his cell.

5        Minutes after returning to his cell, plaintiff alleges Correctional Officer Stephens

6   arrived and took plaintiff to ad seg.

7        On February 18, 2009, while plaintiff was in ad seg, defendant Cappel informed

8   plaintiff that Cappel "must protect his officer," and that plaintiff would be held in ad seg until he

9   was transferred.  (Dkt. No. 51 at 6.)  Plaintiff alleges defendant Cappel authorized plaintiff's

10   placement in ad seg based on the information he received from defendant McGuire as to the

11   alleged threat plaintiff made against defendant Rosario.  (Dkt. No. 51 at 9.)  Plaintiff alleges he

12   told defendant Cappel that he had not threatened defendant Rosario, and had been on the yard

13   with defendant Rosario for months.  (Id.)

14        On February 19, 2009, a classification hearing was held, headed by defendant

15   Singh, to review plaintiff's retention in ad seg pending investigation.  (Dkt. No. 51 at 6.)

16   Plaintiff claims he submitted case law informing the committee that retaining him in ad seg

17   based on his failure to drop the complaint against defendant Rosario violated plaintiff's

18   constitutional rights.

19        On March 5, 2009, another classification hearing was held, headed by defendant

20   Haviland, who plaintiff alleges put him up for transfer due to defendant Rosario's February 19,

21   2009 request.  Plaintiff was transferred to a prison in San Luis Obispo on April 28, 2009.

22        B.  Defendants' Motion

23        Defendants Bickham, McGuire, Cappel, Singh, and Haviland (hereafter

24   "defendants") argue that plaintiff's allegations fail to state claims for First Amendment

25   retaliation because defendant Bickham's transfer of plaintiff to ad seg lacked retaliatory motive

26   and promoted the legitimate penological interests of maintaining institutional security ensuring

8

1  plaintiff's safety; the actions of defendants McGuire and Cappel lacked retaliatory motive, and

2  also promoted institutional security, and ensured defendant Rosario's safety; plaintiff allegations

3  as to defendants Singh and Haviland alleged no facts showing causation, retaliatory motive, or an

4  absence of legitimate correctional goals.  In the alternative, defendants argue they are entitled to

5  qualified immunity.

6          C. Plaintiff's Opposition

7          In opposition, plaintiff claims that he has established each of the five elements

8  required under Rhodes v. Robinson, 408 F.3d 559, 568 (9th Cir. 2005).  Plaintiff reiterates his

9  claim that defendants took adverse action against him "because he filed staff complaints and or

10  refused to drop staff complaints."  (Dkt. No. 55 at 4.)  Plaintiff claims his rights were chilled

11  when "they locked him up in ad seg for filing said complaints," and that their actions did not

12  advance legitimate correctional goals "because the plaintiff could have been placed on a different

13  yard while the investigation took place," and the fact that plaintiff had been present on the yard

14  with defendant Rosario "while the complaints were active."  (Id.)  Plaintiff contends that during

15  the hearing on plaintiff's staff complaint, defendant McGuire said he was thinking about locking

16  plaintiff up in ad seg before plaintiff responded to McGuire's question, as supported by

17  plaintiff's February 23, 2009 grievance (dkt. no. 55 at 11).  Plaintiff argues that had his response

18  to defendant McGuire's question been viewed as an actual threat, plaintiff would have been

19  handcuffed and escorted to ad seg, rather than being twice allowed to walk back and forth to his

20  cell after staff failed to get plaintiff to drop his complaint.  (Dkt. No. 55 at 5.)

21          Finally, as to the claims against Singh and Haviland, plaintiff contends the

22  February 26, 2009 classification chrono speaks for itself, because the committee did not

23  "mention the words 'threat to [defendant] Rosario's personal safety.'"  (Id.)  Rather, the

24  committee noted that plaintiff "is not going to stop his mission to get officer Rosario fired."  (Id.)

25  Plaintiff claims he "never said he wanted to make sure [defendant Rosario] was no longer an

26  officer, but only that '[plaintiff] wanted [Rosario] to stop hurting people.'"  (Id.)

1        D.  Defendants' Reply

2            In reply, defendants contend that plaintiff does not dispute that he failed to allege

3  facts showing that defendants had any motive to retaliate against plaintiff on behalf of other

4  officers, regarding matters that they either knew nothing about or in which they lacked any vested

5  interest.  (Dkt. No. 58 at 3.)  Defendants argue that plaintiff does not dispute that plaintiff was

6  temporarily placed in ad seg in order to protect the integrity of an investigation.  (Id. at 4.)

7  Rather, plaintiff contends that no legitimate correctional goal was served because plaintiff could

8  have been placed on a different yard rather than in ad seg.  Defendants contend plaintiff's

9  argument is unsupported by law, citing Rhodes, 408 F.3d at 562 ("narrowly tailored" language

10  changed to "reasonably advance a legitimate correctional goal in April 25, 2005 slip. op.)

11            Defendants object to plaintiff's new claim that defendant McGuire was "thinking

12  about" placing plaintiff in ad seg before plaintiff made the alleged threatening statements against

13  defendant Rosario, because it was not included in the operative complaint.  But even assuming

14  defendant McGuire made such a statement, plaintiff did not dispute the fact that he was not

15  placed in ad seg until after the alleged threatening comments were made.  Plaintiff also failed to

16  dispute that acting to protect the safety of an officer promotes institutional safety and security,

17  and therefore reasonably advances a legitimate penological interest.

18            Finally, as to plaintiff's claims against defendants Singh and Haviland, defendants

19  argue that plaintiff misstated the facts inasmuch as the classification chrono clearly states that the

20  decision was based on plaintiff's verbal statements made to defendant McGuire, as well as

21  defendant Rosario's statement that plaintiff's actions made him feel like he was being placed in

22  an unsafe work environment.  (Dkt. No. 58 at 5.)

23        E.  Legal Standards

24            To state a claim for retaliation under the First Amendment, plaintiff must satisfy

25  five elements.  Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).  First, the plaintiff must

26  allege that the retaliated-against conduct is protected.  The filing of an inmate grievance is

protected conduct. <u>Rhodes</u>, 408 F.3d at 568.  Second, the plaintiff must claim the defendant took

adverse action against the plaintiff.  <u>Id.</u> at 567.  The adverse action need not be an independent

constitutional violation.  <u>Pratt v. Rowland</u>, 65 F.3d 802, 806 (9th Cir. 1995).  "[T]he mere threat

of harm can be an adverse action. . . ."  <u>Brodheim</u>, 584 F.3d at 1270.  Third, the plaintiff must

allege a causal connection between the adverse action and the protected conduct.  Because direct

evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of

events from which retaliation can be inferred is sufficient to survive dismissal.  <u>Pratt</u>, 65 F.3d at

808 ("timing can properly be considered as circumstantial evidence of retaliatory intent").

Fourth, the plaintiff must allege that the "official's acts would chill or silence a person of ordinary

firmness from future First Amendment activities."  <u>Rhodes</u>, 408 F.3d at 568 (internal quotation

marks and emphasis omitted).  "[A] plaintiff who fails to allege a chilling effect may still state a

claim if he alleges he suffered some other harm," <u>Brodheim</u>, 584 F.3d at 1269, that is "more than

minimal," <u>Rhodes</u>, 408 F.3d at 568 n.11.  The fact that the retaliatory conduct did not chill the

plaintiff from suing the alleged retaliator does not defeat the retaliation claim at the motion to

dismiss stage.  <u>Id.</u> at 569.  Fifth, the plaintiff must allege "that the prison authorities' retaliatory

action did not advance legitimate goals of the correctional institution. . . ."  <u>Rizzo v. Dawson</u>,

778 F.2d 527, 532 (9th Cir. 1985).  A plaintiff successfully pleads this element by alleging, in

addition to a retaliatory motive, that the defendant's actions were arbitrary and capricious, <u>id.</u>, or

that they were "unnecessary to the maintenance of order in the institution," <u>Franklin v. Murphy</u>,

745 F.2d 1221, 1230 (9th Cir. 1984).  However, not every allegedly adverse action will support a

retaliation claim.  <u>See</u> <u>e.g.</u> <u>Huskey v. City of San Jose</u>, 204 F.3d 893, 899 (9th Cir. 2000)

(retaliation claim cannot rest on the logical fallacy of post hoc, ergo propter hoc, literally, "after

this, therefore because of this.").

        C.  <u>Analysis</u>

        As to defendant Bickham, plaintiff's allegations, without more, fail to

demonstrate that defendant Bickham was motivated to retaliate against plaintiff on behalf of

1  another officer.  Simply advising plaintiff that if he continued with the excessive force complaint,

2  plaintiff would be placed in ad seg for a ninety-day investigation does not demonstrate retaliatory

3  motive.  Plaintiff alleges no additional facts suggesting defendant Bickham acted with a

4  retaliatory motive.

5          In addition, plaintiff failed to allege facts demonstrating that defendant Bickham

6  did not have a legitimate penological interest in temporarily placing plaintiff in ad seg pending

7  the investigation.  In his opposition, plaintiff claims that "the actions did not reasonably advance

8  a legitimate correctional goal because the plaintiff could have been placed on a different yard

9  while the investigation took place."  (Dkt. No. 55 at 4.)

10         Temporary ad seg placement is required where safety or prison security concerns

11  are raised, or to protect the integrity of an investigation."  Cal. Code Regs. tit. 15, § 3335(a)-(b).

12  This regulation provides for plaintiff's temporary placement in ad seg pending investigation of a

13  complaint for excessive force.  "[M]aintaining the integrity of an investigation into serious

14  institutional misconduct is a legitimate penological interest."  Bryant v. Cortez, 536 F.Supp. 2d

15  1160, 1169 (C.D. Cal. 2008); see also Draper v. Harris, 245 Fed. Appx. 699, 701 (9th Cir. 2007)

16  ("Draper failed to raise a triable issue as to whether his placement in administrative segregation

17  pending the investigation of his complaints did not advance a legitimate penological goal.").

18  Thus, defendant Bickham's motion to dismiss plaintiff's retaliation claim should be granted.

19         Similarly, plaintiff provided no additional facts demonstrating defendant Cappel

20  acted with retaliatory intent (dkt. no. 55 at 3-4), when defendant Cappel informed plaintiff that

21  Cappel "must protect his officer," and that plaintiff would be held in ad seg until he was

22  transferred.  Defendant Cappel's statement, without more, does not suggest retaliatory motive.

23  Plaintiff concedes that defendant Cappel placed plaintiff in ad seg based on defendant McGuire's

24  report of plaintiff's alleged threat.  As noted above, prison officials are permitted to place

25  inmates in ad seg where safety concerns are raised.  Defendant Cappel's motion to dismiss

26  should also be granted.

1           As to defendants Singh and Haviland, plaintiff failed to provide additional facts to

2   show a causal connection between these defendants and plaintiff's retaliation claims, or that

3   either defendant had a retaliatory motive.  (Dkt. No. 55 at 3-4.)  In the operative complaint,

4   plaintiff vaguely suggests that defendants Singh and Haviland should have questioned plaintiff's

5   alleged threat to have defendant Rosario fired because plaintiff "had been on the yard with

6   [defendant] Rosario for months."  (Dkt. No. 51 at 10.)  The court finds this argument

7   unpersuasive as circumstances in prison can quickly change.  Absent additional allegations, the

8   fact that plaintiff and defendant Rosario may have gotten along prior to the August 5, 2008

9   incident is not relevant to what happened in the February 26, 2009 classification hearing.

10          The classification chrono from the February 26, 2009 hearing does not suggest a

11  retaliatory motive on the part of defendants Singh or Haviland.  Indeed, the committee was

12  composed of several other people, in addition to defendants Singh and Haviland.  (Dkt. No. 55 at

13  16.)  The chrono shows that the decision to retain plaintiff in ad seg pending transfer was based

14  on plaintiff's alleged threat, and was supported by defendant Rosario's concern that he had been

15  "placed in an unsafe work environment."  (Id.)  Nothing in the chrono suggests a retaliatory

16  motive on the part of either Singh or Haviland.  Thus, plaintiff failed to establish a causal

17  connection between defendants Singh and Haviland and plaintiff's alleged retaliation claims, and

18  failed to allege sufficient facts to suggest a retaliatory motive.

19          In addition, plaintiff failed to allege facts demonstrating that defendants Singh and

20  Haviland acted without a legitimate penological goal.  Plaintiff claims the chrono reflects an

21  absence of a legitimate correctional goal because the chrono does not "mention the words threat

22  to [defendant] Rosario's safety."  (Dkt. No. 55 at 5.)  However, the chrono reflects plaintiff's

23  alleged threat, as expressed by defendant McGuire, and the committee's understanding that the

24  alleged statement threatened defendant Rosario is implied from their response:  "Based on this

25  statement, it appears [plaintiff] is not going to stop his mission to get Officer Rosario fired."

26  (Dkt. No. 55 at 16.)  The alleged statement by plaintiff could legitimately be construed as a threat

1  against defendant Rosario, particularly when read in conjunction with defendant Rosario's

2  concern that he would be placed in an unsafe work environment if plaintiff remained.  Plaintiff

3  alleged no facts connecting defendants Singh or Haviland to plaintiff's other allegations

4  concerning retaliation, to the events of February 16, 2009, or to defendant McGuire.  Thus,

5  plaintiff fails to plead sufficient facts alleging that plaintiff's retention in ad seg and his transfer

6  did not serve a legitimate penological goal.

7          For all of the above reasons, the motion to dismiss plaintiff's retaliation claims as

8  to defendants Singh and Haviland should also be granted.

9          Plaintiff has been provided multiple opportunities to amend his complaint.  By

10  findings and recommendations issued on October 17, 2011, plaintiff was informed as to the

11  standards for stating a viable retaliation claim, as well as the importance of setting forth specific

12  factual allegations to support such a claim.  (Dkt. No. 45 at 18-21.)  In his opposition to the

13  instant motion, plaintiff failed to allege specific facts as to defendants Bickham, Cappel, Singh or

14  Haviland.  (Dkt. No. 55 at 4-5.)  For all of these reasons, the court finds that plaintiff's claims

15  against defendants Bickham, Cappel, Singh, and Haviland should be dismissed with prejudice.

16          Finally, the court turns to defendant McGuire.  With his opposition, plaintiff

17  provides a copy of his February 23, 2009 administrative appeal, in which he claims contains "the

18  actual colloquy verbatim between the plaintiff and [defendant] McGuire" and shows that

19  defendant McGuire thought about putting plaintiff in ad seg before plaintiff made the alleged

20  threat about defendant Rosario.[5]  (Dkt. No. 55 at 5, 11.)  This verbal exchange between defendant

21  McGuire and plaintiff took place during the appeal interview on February 16, 2009.

22  ////

23  _____

24          [5]  Defendants object to plaintiff's effort "to introduce new factual allegations at this
    juncture because he has neither requested nor received leave to amend his complaint."  (Dkt. No.
    58 at 4.)  This court disagrees.  In the second amended complaint, plaintiff recites specific factual

25  allegations concerning his exchange with defendant McGuire on February 16, 2009, and
    specifically cites to his administrative appeal 08-3956.  (Dkt. No. 51 at 6.)  Plaintiff is not

26  required to allege every single fact in support of his claims.

1    The court sets forth the entire conversation, as related by petitioner in his appeal:

2    On 2/16/09 I went before Lt. McGuire regarding a staff complaint I
     filed against C/O Rosario for harassment[.]  [D]uring the interview
3    Lt. McGuire said "you wrote him up for 'excessive force' and it is
     not uncommon to suffer injuries during a take down," I responded
4    "that complaint has been dealt with and I don't think we should
     talk about that."  Lt. responded, "I talk about whatever I want, this
5    is going to stop, I am seriously thinking about locking you up!
     What do you want from this, money?  I responded, "I want him to
6    stop hurting people, I have a right to file a complaint if I feel I've
     been done wrong, that is my purpose."  The Lt. had me look in the
7    title § 15 under use of restraints.  The interview concluded after I
     told him what happened and that I had witnesses to my allegations,
8    he said he would call them, Lt. McGuire went on to say his job was
     to protect the interest of his officers.  Lt. McGuire concluded the
9    interview and told me to return to my housing unit.  Lt. McGuire
     told me as I walked out, "you will be leaving before my officer.

10

11   (Dkt. No. 55 at 11, 13.)

12        Plaintiff must show that his protected conduct was a "'substantial' or 'motivating'

13   factor behind the defendant's conduct."  Brodheim, 584 F.3d 1262, 1271 (9th Cir. 2009).  To do

14   so, plaintiff may rely on circumstantial evidence establishing a defendant's intent or motive.  See

15   Bruce v. Ylst, 351 F.3d 1283, 1288-89 (9th Cir. 2003) (concluding prisoner raised a triable issue

16   of fact regarding official's retaliatory motive with evidence of suspect timing, stale evidence

17   presented against the plaintiff, and statements suggesting retaliatory intent that the official made).

18        Liberally construed, defendant McGuire's alleged statement, "this is going to stop,

19   I am seriously thinking about locking you up!" spoken in the context of plaintiff's staff complaint

20   against defendant Rosario, raises an inference of retaliatory intent because it implies defendant

21   McGuire was going to punish plaintiff because plaintiff filed a grievance against defendant

22   Rosario.  See Brodheim, 584 F.3d at 1269 (threat of discipline or transfer to another prison was

23   sufficient to support retaliation claim).  Defendant McGuire's closing statement, "you will be

24   leaving before my officer," also supports such an inference.

25        Moreover, in his verified second amended complaint, plaintiff claims his response

26   to defendant McGuire was "I want him [Rosario] to stop hurting people."  (Dkt. No. 51 at 6.)  On

15

1  a motion to dismiss, the court must accept plaintiff's statement as true.  The allegation that

2  defendant McGuire viewed plaintiff's version of his statement as a verbal threat against

3  defendant Rosario, yet did not put plaintiff in handcuffs and have him escorted to ad seg

4  immediately, but rather allowed plaintiff to return to his cell, supports the inference of retaliatory

5  intent.  Moreover, plaintiff alleges that after he returned to his cell, he was called "back to the

6  program office" (id.), apparently the same program office where plaintiff met with defendant

7  McGuire, and Sgt. Fowler asked about plaintiff's staff complaint, and then made reference to the

8  Green wall.  This allegation, taken as true at the pleading stage, supports an inference that

9  defendant McGuire may have spoken with Sgt. Fowler, and that their intent was to get plaintiff to

10  drop his grievance against defendant Rosario.  But even if there was no communication between

11  defendant McGuire and Sgt. Fowler, the delay alone supports an inference of retaliatory intent on

12  the part of defendant McGuire.

13           Defendant McGuire argues that the fact that plaintiff was not placed into ad seg

14  until after plaintiff made the alleged threat entitles defendant to dismissal based on plaintiff's

15  failure to show there was no legitimate penological interest served by his placement in ad seg.

16  However, taking plaintiff's statement as to the wording of the alleged threat as true, the court

17  cannot find that there was a need for placement in ad seg, and thus cannot find, on a motion to

18  dismiss, that there was a legitimate penological purpose for retaining plaintiff in ad seg pending

19  transfer.  Although defendant McGuire may be able to adduce evidence demonstrating he did not

20  retaliate against plaintiff, plaintiff has provided sufficient factual allegations to state a cognizable

21  retaliation claim against defendant McGuire.  Thus, defendant McGuire is not entitled to

22  dismissal based on plaintiff's retaliation claims.

23  ////

24  ////

25  ////

26  ////

1   V.  Qualified Immunity [6]

2            Determining whether an official is entitled to qualified immunity requires a two-

3   part analysis.  See Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled on other grounds by

4   Pearson v. Callahan, 555 U.S. 223 (2009).  First, a court must decide whether the facts alleged,

5   when taken in the light most favorable to plaintiff, demonstrate that the defendant's conduct

6   violated a statutory or constitutional right.  Saucier, 533 U.S. at 201-02.  Second, the court must

7   determine whether the statutory or constitutional right alleged by plaintiff was "clearly

8   established."  Id. at 201.  A right is "clearly established" for the purpose of qualified immunity if

9   "'it would be clear to a reasonable [prison official] that his conduct was unlawful in the situation

10  he confronted' . . . or whether the state of the law [at the time of the alleged violation] gave 'fair

11  warning' to [him] that [his] conduct was unconstitutional."  Clement v. Gomez, 298 F.3d 898,

12  906 (9th Cir. 2002) (quoting Saucier, 533 U.S. at 202).

13           Although it is often beneficial to approach the two-part inquiry in the sequence

14  prescribed above, it is not mandatory.  Pearson, 555 U.S. at 231-32.  A district court has

15  "discretion in deciding which of the two prongs of the qualified immunity analysis should be

16  addressed first."  Id.  The court may grant defendants qualified immunity at any point the court

17  answers either prong of the inquiry in the negative.  See e.g., Tibbetts v. Kulongoski, 567 F.3d

18  529, 536-39 (9th Cir. 2009) (bypassed the first prong and granted defendants qualified immunity

19  because plaintiff's due process right was not clearly established at the time of alleged violation).

20           In this case, plaintiff's First Amendment right to file inmate grievances free from

21  prison official retaliation was clearly established by 2008, the year the alleged violations began.

22  See Pratt, 65 F.3d at 806 ("[T]he prohibition against retaliatory punishment is clearly established

23  law in the Ninth Circuit, for qualified immunity purposes.").  Thus, defendant McGuire is

24  _____

25      [6]  In light of the recommendations that plaintiff's retaliation claims against defendants
    Bickham, Cappel, Singh, and Haviland, be dismissed, the court only addresses defendants'
    qualified immunity argument as it applies to plaintiff's retaliation claims against defendant
26  McGuire.

1   entitled to qualified immunity only if plaintiff has failed to allege facts that, if proven, would

2   sufficiently demonstrate that defendant's conduct violated his First Amendment rights. See

3   Saucier, 533 U.S. at 201.

4          Here, as discussed above, plaintiff's allegations of retaliation as to defendant

5   McGuire meet the threshold requirement of stating a cognizable constitutional violation under

6   section 1983. Liberally construed, plaintiff alleges that defendant McGuire threatened plaintiff

7   with punishment if plaintiff refused to withdraw his complaint against defendant Rosario, and

8   then mischaracterized plaintiff's alleged threat against defendant Rosario, in retaliation for

9   plaintiff filing an excessive force complaint against Rosario. Assuming the truth of these

10  allegations, defendant McGuire's actions could not be considered a reasonable mistake.

11  Accordingly, it is recommended that defendant McGuire's motion to dismiss the second amended

12  complaint based on qualified immunity be denied.

13  VI.  Conclusion

14         Accordingly, IT IS HEREBY RECOMMENDED that:

15         1.  Defendant Easterling's motion to dismiss (dkt. no. 54) be granted, and

16  plaintiff's excessive force claim be dismissed without prejudice;

17         2.  The motion to dismiss (dkt. no. 54) filed by defendants Bickham, Cappel,

18  Singh, and Haviland be granted; and plaintiff's retaliation claims be dismissed with prejudice;

19         3.  Defendant McGuire's motion to dismiss plaintiff's retaliation claims be

20  denied; and

21         4.  Within fourteen days from any district court order adopting the instant findings

22  and recommendations, defendant Rosario be directed to file an answer to plaintiff's excessive

23  force claims, and defendants Rosario, Garcia, and McGuire be directed to file an answer to

24  plaintiff's First Amendment retaliation claims.

25         These findings and recommendations are submitted to the United States District

26  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen

days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  February 4, 2013

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

mitc3012.mtd