IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOHN EDWARD MITCHELL,

    Plaintiff,                     No. 2:09-cv-3012 JAM KJN P

    vs.

J. HAVILAND, et al,

    Defendants.             FINDINGS AND RECOMMENDATIONS

_____/

I. Introduction

       Plaintiff is a state prisoner, proceeding without counsel and in forma pauperis, with an action filed pursuant to 42 U.S.C. § 1983. This action is proceeding on plaintiff's Eighth Amendment claims for excessive force against defendants Rosario and Easterling, and First Amendment retaliation claims against defendants Rosario, Garcia, Bickham, McGuire, Cappel, Singh, and Haviland. (Dkt. Nos. 45, 53.) Defendant Easterling moves to dismiss plaintiff's excessive force claim on the ground that plaintiff's claim is barred by Edwards v. Balisok, 520 U.S. 641, 646 (1997). In addition, defendants Bickham, McGuire, Cappel, Singh, and Haviland move to dismiss plaintiff's retaliation claims for failure to state a claim, or, in the alternative, because defendants are entitled to qualified immunity. As set forth more fully below, this court finds that the motion to dismiss should be granted in part, and denied in part.

1

II. <u>Legal Standard for Motion to Dismiss</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedures provides for motions to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept as true the allegations of the complaint in question, <u>Erickson v. Pardus</u>, 551 U.S. 89 (2007), and construe the pleading in the light most favorable to the plaintiff. <u>Jenkins v. McKeithen</u>, 395 U.S. 411, 421 (1969); <u>Meek v. County of Riverside</u>, 183 F.3d 962, 965 (9th Cir. 1999). Still, to survive dismissal for failure to state a claim, a pro se complaint must contain more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555-57 (2007). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009). Furthermore, a claim upon which the court can grant relief must have facial plausibility. <u>Twombly</u>, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 129 S. Ct. at 1949. Attachments to a complaint are considered to be part of the complaint for purposes of a motion to dismiss for failure to state a claim. <u>Hal Roach Studios v. Richard Feiner & Co.</u>, 896 F.2d 1542, 1555 n.19 (9th Cir.1990).

A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief. <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984). In general, pro se pleadings are held to a less stringent standard than those drafted by lawyers. <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972). The court has an obligation to construe such pleadings liberally. <u>Bretz v. Kelman</u>, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc). However, the court's liberal interpretation of a pro se complaint may not supply essential elements of the claim that were not pled. <u>Ivey v. Bd. of Regents of Univ. of Alaska</u>, 673 F.2d 266, 268 (9th Cir. 1982).

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted). However, under the "incorporation by reference" doctrine, a court may also review documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005) (citation omitted and modification in original). The incorporation by reference doctrine also applies "to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." Id.

> In considering a Rule 12(b)(6) motion, a district court generally may not take into account material beyond the complaint. Intri-Plex Technologies, Inc. v. Crest Group, Inc., 499 F.3d 1048, 1052 (9th Cir. 2007). However, there are exceptions to the general rule. Under the "incorporation by reference" doctrine, we may consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005) (alteration in original) (internal quotation marks omitted); see also Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322, 127 S. Ct. 2499, 168 L. Ed.2d 179 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.").

Dunn v. Castro, 621 F.3d 1196, 1205 n.6 (9th Cir. 2010).

III. Alleged Excessive Force Claim - Defendant Easterling

In the second amended complaint, plaintiff alleges that on August 5, 2008, Correctional Officer Presto informed plaintiff that he would have to take a cellmate; plaintiff declined, and asked to be placed in administrative segregation ("ad seg") instead. (Dkt. No. 51 at

3

3.) Correctional Officer Presto left and returned to his office. Minutes later, defendants Rosario, Easterling, and Durfey came into plaintiff's cell. (Id. at 4.) Defendant Easterling allegedly asked plaintiff if he refused a cellmate, and plaintiff said yes, and requested placement in ad seg. Plaintiff was handcuffed and escorted out of the building by defendant Rosario. Defendants Easterling and Durfey exited through a side door and met up with plaintiff and defendant Rosario in the yard. When plaintiff realized he was not being taken to ad seg, but was being taken to another building, plaintiff turned his head toward defendant Easterling and said, "please don't try to force me into a cell, [I] asked to go to ad seg." (Id.) Plaintiff alleges that defendant Rosario then said, "he's resisting, take him down?" (Id.) Plaintiff claims defendant Easterling responded: "take him down, now you're going to ad seg." (Id.)

Plaintiff alleges defendant Easterling pressed his alarm button, and claims defendant Rosario used excessive force in taking plaintiff to the ground. (Id.) Plaintiff claims he suffered injuries to his left shoulder and back. (Id. at 4, 7.) Plaintiff alleges defendant Easterling's order to use force was "unnecessary." (Id. at 7.)

Plaintiff received a Rules Violation Report ("RVR") S1-08-08-1142-R for "Resisting Staff Resulting in the Use of Force." (Dkt. No. 54-3 at 3-6.)[1] Plaintiff was found guilty at a disciplinary hearing, based on the findings and plaintiff attempted to break free from defendant Rosario's escort by abruptly stopping and trying to spin away, necessitating the use of force to gain control of plaintiff. Plaintiff was assessed a credit for forfeiture of ninety days. (Id.)

A. <u>Favorable Termination Rule</u>

A state prisoner's § 1983 claim is not cognizable if success on the claim would necessarily imply the invalidity of a still-valid sentence or disciplinary finding that affects the

---

[1] Defendants' request to take judicial notice of the RVR is granted. Dunn, 621 F.3d at 1205 n.6. Plaintiff attached a partial copy of the RVR to his first amended complaint. (Dkt. No. 19 at 29-30.) Plaintiff also provided a partially illegible copy of the RVR with an earlier supplemental complaint. (Dkt. No. 9 at 27-32.)

length of his incarceration. Heck v. Humphrey, 512 U.S. 477, 486-87 (1994). Consequently, a prisoner's § 1983 challenge to disciplinary hearing procedures is barred if judgment in his favor would necessarily imply the invalidity of the resulting loss of good-time credits. Edwards, 520 U.S. at 646 (dismissing § 1983 action for declaratory relief and monetary damages because successful challenge to procedures used in disciplinary hearing would necessarily imply the invalidity of the punishment imposed). See also Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005) (explaining that "a state prisoner's § 1983 action is barred (absent prior invalidation) no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings), if success in that action would necessarily demonstrate the invalidity of confinement or its duration" (emphasis omitted)). Put another way, a § 1983 claim is barred if the "plaintiff could prevail only by negating 'an element of the offense of which he has been convicted.'" Cunningham v. Gates, 312 F.3d 1148, 1153-54 (9th Cir. 2002) (citing Heck, 512 U.S. at 487 n.6). However, when the § 1983 claim does not necessarily implicate the underlying disciplinary action (or criminal conviction), it may proceed. See Muhammad v. Close, 540 U.S. 749, 751, 754-55 (2004) (Heck does not bar a prisoner's § 1983 suit when a favorable verdict would not affect his disciplinary conviction.)

    B.  Analysis

    In this case, plaintiff claims that defendant Easterling authorized defendant Rosario's use of force on August 5, 2008, but that the order to use force was unnecessary. (Dkt. No. 51 at 4, 7.) Plaintiff's allegation that the use of force was unnecessary contradicts the findings of the disciplinary hearing, where it was determined that petitioner's resistive actions necessitated the use of force. Therefore, any finding that no force was required would negate the resisting staff element of the disciplinary charge, thus invalidating the disciplinary conviction, and would negate the loss of good time credits. See Cunningham, 312 F.3d at 1153-54 ("an important touchstone is whether a § 1983 plaintiff could prevail only by negating 'an element of the offense of which he has been convicted.")

1    In opposition, plaintiff does not dispute the nature of his claim against defendant Easterling, but argues that this claim is not barred because plaintiff did not seek to expunge the RVR or to reinstate his time credits.[2] (Dkt. No. 55 at 3.)  Plaintiff also argues that because he is a three strikes inmate serving an indeterminate sentence of 85 years to life, he is not entitled to receive prison conduct credits.  (Id. at 4.)

   However, because plaintiff's claim necessarily implies the invalidity of the disciplinary conviction, the nature of the relief sought cannot avoid the Edwards bar.  Wilkinson, 544 U.S. at 81-82.  In other words, whether or not plaintiff seeks to reinstate his time credits, and whether or not plaintiff was entitled to earn such credits, is of no consequence here.  Resolution of plaintiff's claim against defendant Easterling would implicate an element of the offense underlying the disciplinary conviction, and therefore is barred by Edwards, 520 U.S. at 646, regardless of the relief sought in this action.

   Accordingly, defendant Easterling's motion to dismiss should be granted, and plaintiff's excessive force claim should be dismissed without prejudice.[3]

IV.   Alleged Retaliation - Bickham, McGuire, Cappel, Singh, and Haviland

   A.   Plaintiff's Allegations - Verified Second Amended Complaint

   In the operative complaint, plaintiff alleges he was placed in ad seg on August 5, 2008, and on August 14, 2008, plaintiff transferred from ad seg to yard one.  (Dkt. No. 51 at 5.)  The next day, plaintiff told Sgt. Henry that plaintiff wanted to file an excessive force complaint concerning the August 5, 2008 incident.  On August 16, 2008, plaintiff filed an administrative appeal claiming an excessive use of force on August 5, 2008.  (Dkt. No. 38-3 at 4.)  That same day, plaintiff was called to the office by defendant Bickham and Sgt. Henry, and plaintiff alleges defendant Bickham told plaintiff that if he continued with the excessive force complaint, plaintiff

---

[2] Plaintiff also concedes that he is challenging the validity of the prison disciplinary in Mitchell v. Adams, Case No. 1:10-cv-1342 (E.D. Cal.).  (Dkt. No. 55 at 4.)

[3] However, plaintiff's alleged excessive force claim against defendant Rosario remains.

6

would be placed in ad seg for a ninety-day investigation. Plaintiff declined to withdraw the complaint, was questioned by Sgt. Henry, and videotaped by Sgt. D. Burris, and then escorted to ad seg.

On October 23, 2008, plaintiff alleges he was released from ad seg, but that Correctional Officer Mata attempted to escort plaintiff to a gym where plaintiff feared he would be assaulted by inmates who were told that plaintiff was a snitch. Plaintiff sat down, and plaintiff alleges Sgt. Orrick told Mata to return plaintiff to ad seg.

On November 2, 2008, plaintiff was released to yard one. The next day, as plaintiff exited the dining hall, defendant Rosario allegedly said, "Lock his ass up, I'll stand over, that's the muthafucker I have to go to court about." (Dkt. No. 51 at 5.) Defendant Garcia allegedly stopped plaintiff and ordered him to a wall, and searched and handcuffed plaintiff. Defendant Rosario then allegedly said, "take him to medical for a 7219." (Id.) Plaintiff alleges Correctional Officer Freitas asked "what did he do," and then went and told defendant Bickham, who ordered defendant Garcia to bring plaintiff to Bickham's office. Plaintiff alleges he and defendant Rosario were questioned, and plaintiff was released to his cell, where plaintiff alleges he filed complaint 08-3956 on November 3, 2008.[4]

On February 16, 2009, plaintiff was called to the program office by defendant McGuire as to complaint 08-3956, where McGuire allegedly asked whether plaintiff wanted money; plaintiff allegedly responded that he wanted to make sure defendant Rosario no longer hurt anyone else, and that plaintiff would not drop the complaint. (Dkt. No. 51 at 6.) Defendant McGuire allegedly responded that plaintiff "will leave the yard before my officer does." (Id.)

After returning to his cell, plaintiff alleges Sgt. Fowler called plaintiff back to the program office, where plaintiff was again asked about complaint 08-3956. Plaintiff alleges that

---

[4] A copy of plaintiff's appeal 08-03956 was submitted in support of defendants' prior motion to dismiss for failure to exhaust administrative remedies, and is located at Dkt. No. 38-9 at 6. It appears that Appeal 08-03956 was signed by plaintiff on November 8, 2008. (Id.)

during this meeting, Sgt. Fowler allegedly reminded plaintiff that he was with plaintiff at Salinas Valley State Prison during all the "Green wall stuff," and allegedly said that Fowler and defendant Rosario were "homeboys." (Id.) Plaintiff told Sgt. Fowler that he had a right to file a complaint and would not drop it. Plaintiff was told to return to his cell.

Minutes after returning to his cell, plaintiff alleges Correctional Officer Stephens arrived and took plaintiff to ad seg.

On February 18, 2009, while plaintiff was in ad seg, defendant Cappel informed plaintiff that Cappel "must protect his officer," and that plaintiff would be held in ad seg until he was transferred. (Dkt. No. 51 at 6.) Plaintiff alleges defendant Cappel authorized plaintiff's placement in ad seg based on the information he received from defendant McGuire as to the alleged threat plaintiff made against defendant Rosario. (Dkt. No. 51 at 9.) Plaintiff alleges he told defendant Cappel that he had not threatened defendant Rosario, and had been on the yard with defendant Rosario for months. (Id.)

On February 19, 2009, a classification hearing was held, headed by defendant Singh, to review plaintiff's retention in ad seg pending investigation. (Dkt. No. 51 at 6.) Plaintiff claims he submitted case law informing the committee that retaining him in ad seg based on his failure to drop the complaint against defendant Rosario violated plaintiff's constitutional rights.

On March 5, 2009, another classification hearing was held, headed by defendant Haviland, who plaintiff alleges put him up for transfer due to defendant Rosario's February 19, 2009 request. Plaintiff was transferred to a prison in San Luis Obispo on April 28, 2009.

B. Defendants' Motion

Defendants Bickham, McGuire, Cappel, Singh, and Haviland (hereafter "defendants") argue that plaintiff's allegations fail to state claims for First Amendment retaliation because defendant Bickham's transfer of plaintiff to ad seg lacked retaliatory motive and promoted the legitimate penological interests of maintaining institutional security ensuring

8

plaintiff's safety; the actions of defendants McGuire and Cappel lacked retaliatory motive, and also promoted institutional security, and ensured defendant Rosario's safety; plaintiff allegations as to defendants Singh and Haviland alleged no facts showing causation, retaliatory motive, or an absence of legitimate correctional goals. In the alternative, defendants argue they are entitled to qualified immunity.

### C. Plaintiff's Opposition

In opposition, plaintiff claims that he has established each of the five elements required under Rhodes v. Robinson, 408 F.3d 559, 568 (9th Cir. 2005). Plaintiff reiterates his claim that defendants took adverse action against him "because he filed staff complaints and or refused to drop staff complaints." (Dkt. No. 55 at 4.) Plaintiff claims his rights were chilled when "they locked him up in ad seg for filing said complaints," and that their actions did not advance legitimate correctional goals "because the plaintiff could have been placed on a different yard while the investigation took place," and the fact that plaintiff had been present on the yard with defendant Rosario "while the complaints were active." (Id.) Plaintiff contends that during the hearing on plaintiff's staff complaint, defendant McGuire said he was thinking about locking plaintiff up in ad seg before plaintiff responded to McGuire's question, as supported by plaintiff's February 23, 2009 grievance (dkt. no. 55 at 11). Plaintiff argues that had his response to defendant McGuire's question been viewed as an actual threat, plaintiff would have been handcuffed and escorted to ad seg, rather than being twice allowed to walk back and forth to his cell after staff failed to get plaintiff to drop his complaint. (Dkt. No. 55 at 5.)

Finally, as to the claims against Singh and Haviland, plaintiff contends the February 26, 2009 classification chrono speaks for itself, because the committee did not "mention the words 'threat to [defendant] Rosario's personal safety.'" (Id.) Rather, the committee noted that plaintiff "is not going to stop his mission to get officer Rosario fired." (Id.) Plaintiff claims he "never said he wanted to make sure [defendant Rosario] was no longer an officer, but only that '[plaintiff] wanted [Rosario] to stop hurting people." (Id.)

D. <u>Defendants' Reply</u>

In reply, defendants contend that plaintiff does not dispute that he failed to allege facts showing that defendants had any motive to retaliate against plaintiff on behalf of other officers, regarding matters that they either knew nothing about or in which they lacked any vested interest. (Dkt. No. 58 at 3.) Defendants argue that plaintiff does not dispute that plaintiff was temporarily placed in ad seg in order to protect the integrity of an investigation. (<u>Id.</u> at 4.) Rather, plaintiff contends that no legitimate correctional goal was served because plaintiff could have been placed on a different yard rather than in ad seg. Defendants contend plaintiff's argument is unsupported by law, citing <u>Rhodes</u>, 408 F.3d at 562 ("narrowly tailored" language changed to "reasonably advance a legitimate correctional goal in April 25, 2005 slip. op.)

Defendants object to plaintiff's new claim that defendant McGuire was "thinking about" placing plaintiff in ad seg before plaintiff made the alleged threatening statements against defendant Rosario, because it was not included in the operative complaint. But even assuming defendant McGuire made such a statement, plaintiff did not dispute the fact that he was not placed in ad seg until after the alleged threatening comments were made. Plaintiff also failed to dispute that acting to protect the safety of an officer promotes institutional safety and security, and therefore reasonably advances a legitimate penological interest.

Finally, as to plaintiff's claims against defendants Singh and Haviland, defendants argue that plaintiff misstated the facts inasmuch as the classification chrono clearly states that the decision was based on plaintiff's verbal statements made to defendant McGuire, as well as defendant Rosario's statement that plaintiff's actions made him feel like he was being placed in an unsafe work environment. (Dkt. No. 58 at 5.)

E. <u>Legal Standards</u>

To state a claim for retaliation under the First Amendment, plaintiff must satisfy five elements. <u>Brodheim v. Cry</u>, 584 F.3d 1262, 1269 (9th Cir. 2009). First, the plaintiff must allege that the retaliated-against conduct is protected. The filing of an inmate grievance is

protected conduct. Rhodes, 408 F.3d at 568. Second, the plaintiff must claim the defendant took adverse action against the plaintiff. Id. at 567. The adverse action need not be an independent constitutional violation. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995). "[T]he mere threat of harm can be an adverse action. . . ." Brodheim, 584 F.3d at 1270. Third, the plaintiff must allege a causal connection between the adverse action and the protected conduct. Because direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal. Pratt, 65 F.3d at 808 ("timing can properly be considered as circumstantial evidence of retaliatory intent"). Fourth, the plaintiff must allege that the "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." Rhodes, 408 F.3d at 568 (internal quotation marks and emphasis omitted). "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm," Brodheim, 584 F.3d at 1269, that is "more than minimal," Rhodes, 408 F.3d at 568 n.11. The fact that the retaliatory conduct did not chill the plaintiff from suing the alleged retaliator does not defeat the retaliation claim at the motion to dismiss stage. Id. at 569. Fifth, the plaintiff must allege "that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution. . . ." Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985). A plaintiff successfully pleads this element by alleging, in addition to a retaliatory motive, that the defendant's actions were arbitrary and capricious, id., or that they were "unnecessary to the maintenance of order in the institution," Franklin v. Murphy, 745 F.2d 1221, 1230 (9th Cir. 1984). However, not every allegedly adverse action will support a retaliation claim. See e.g. Huskey v. City of San Jose, 204 F.3d 893, 899 (9th Cir. 2000) (retaliation claim cannot rest on the logical fallacy of post hoc, ergo propter hoc, literally, "after this, therefore because of this.").

### C. Analysis

As to defendant Bickham, plaintiff's allegations, without more, fail to demonstrate that defendant Bickham was motivated to retaliate against plaintiff on behalf of

another officer. Simply advising plaintiff that if he continued with the excessive force complaint, plaintiff would be placed in ad seg for a ninety-day investigation does not demonstrate retaliatory motive. Plaintiff alleges no additional facts suggesting defendant Bickham acted with a retaliatory motive.

In addition, plaintiff failed to allege facts demonstrating that defendant Bickham did not have a legitimate penological interest in temporarily placing plaintiff in ad seg pending the investigation. In his opposition, plaintiff claims that "the actions did not reasonably advance a legitimate correctional goal because the plaintiff could have been placed on a different yard while the investigation took place." (Dkt. No. 55 at 4.)

Temporary ad seg placement is required where safety or prison security concerns are raised, or to protect the integrity of an investigation." Cal. Code Regs. tit. 15, § 3335(a)-(b). This regulation provides for plaintiff's temporary placement in ad seg pending investigation of a complaint for excessive force. "[M]aintaining the integrity of an investigation into serious institutional misconduct is a legitimate penological interest." Bryant v. Cortez, 536 F.Supp. 2d 1160, 1169 (C.D. Cal. 2008); see also Draper v. Harris, 245 Fed. Appx. 699, 701 (9th Cir. 2007) ("Draper failed to raise a triable issue as to whether his placement in administrative segregation pending the investigation of his complaints did not advance a legitimate penological goal."). Thus, defendant Bickham's motion to dismiss plaintiff's retaliation claim should be granted.

Similarly, plaintiff provided no additional facts demonstrating defendant Cappel acted with retaliatory intent (dkt. no. 55 at 3-4), when defendant Cappel informed plaintiff that Cappel "must protect his officer," and that plaintiff would be held in ad seg until he was transferred. Defendant Cappel's statement, without more, does not suggest retaliatory motive. Plaintiff concedes that defendant Cappel placed plaintiff in ad seg based on defendant McGuire's report of plaintiff's alleged threat. As noted above, prison officials are permitted to place inmates in ad seg where safety concerns are raised. Defendant Cappel's motion to dismiss should also be granted.

As to defendants Singh and Haviland, plaintiff failed to provide additional facts to show a causal connection between these defendants and plaintiff's retaliation claims, or that either defendant had a retaliatory motive. (Dkt. No. 55 at 3-4.) In the operative complaint, plaintiff vaguely suggests that defendants Singh and Haviland should have questioned plaintiff's alleged threat to have defendant Rosario fired because plaintiff "had been on the yard with [defendant] Rosario for months." (Dkt. No. 51 at 10.) The court finds this argument unpersuasive as circumstances in prison can quickly change. Absent additional allegations, the fact that plaintiff and defendant Rosario may have gotten along prior to the August 5, 2008 incident is not relevant to what happened in the February 26, 2009 classification hearing.

The classification chrono from the February 26, 2009 hearing does not suggest a retaliatory motive on the part of defendants Singh or Haviland. Indeed, the committee was composed of several other people, in addition to defendants Singh and Haviland. (Dkt. No. 55 at 16.) The chrono shows that the decision to retain plaintiff in ad seg pending transfer was based on plaintiff's alleged threat, and was supported by defendant Rosario's concern that he had been "placed in an unsafe work environment." (Id.) Nothing in the chrono suggests a retaliatory motive on the part of either Singh or Haviland. Thus, plaintiff failed to establish a causal connection between defendants Singh and Haviland and plaintiff's alleged retaliation claims, and failed to allege sufficient facts to suggest a retaliatory motive.

In addition, plaintiff failed to allege facts demonstrating that defendants Singh and Haviland acted without a legitimate penological goal. Plaintiff claims the chrono reflects an absence of a legitimate correctional goal because the chrono does not "mention the words threat to [defendant] Rosario's safety." (Dkt. No. 55 at 5.) However, the chrono reflects plaintiff's alleged threat, as expressed by defendant McGuire, and the committee's understanding that the alleged statement threatened defendant Rosario is implied from their response: "Based on this statement, it appears [plaintiff] is not going to stop his mission to get Officer Rosario fired." (Dkt. No. 55 at 16.) The alleged statement by plaintiff could legitimately be construed as a threat

against defendant Rosario, particularly when read in conjunction with defendant Rosario's concern that he would be placed in an unsafe work environment if plaintiff remained. Plaintiff alleged no facts connecting defendants Singh or Haviland to plaintiff's other allegations concerning retaliation, to the events of February 16, 2009, or to defendant McGuire. Thus, plaintiff fails to plead sufficient facts alleging that plaintiff's retention in ad seg and his transfer did not serve a legitimate penological goal.

For all of the above reasons, the motion to dismiss plaintiff's retaliation claims as to defendants Singh and Haviland should also be granted.

Plaintiff has been provided multiple opportunities to amend his complaint. By findings and recommendations issued on October 17, 2011, plaintiff was informed as to the standards for stating a viable retaliation claim, as well as the importance of setting forth specific factual allegations to support such a claim. (Dkt. No. 45 at 18-21.) In his opposition to the instant motion, plaintiff failed to allege specific facts as to defendants Bickham, Cappel, Singh or Haviland. (Dkt. No. 55 at 4-5.) For all of these reasons, the court finds that plaintiff's claims against defendants Bickham, Cappel, Singh, and Haviland should be dismissed with prejudice.

Finally, the court turns to defendant McGuire. With his opposition, plaintiff provides a copy of his February 23, 2009 administrative appeal, in which he claims contains "the actual colloquy verbatim between the plaintiff and [defendant] McGuire" and shows that defendant McGuire thought about putting plaintiff in ad seg before plaintiff made the alleged threat about defendant Rosario.[5] (Dkt. No. 55 at 5, 11.) This verbal exchange between defendant McGuire and plaintiff took place during the appeal interview on February 16, 2009.

////

---

[5] Defendants object to plaintiff's effort "to introduce new factual allegations at this juncture because he has neither requested nor received leave to amend his complaint." (Dkt. No. 58 at 4.) This court disagrees. In the second amended complaint, plaintiff recites specific factual allegations concerning his exchange with defendant McGuire on February 16, 2009, and specifically cites to his administrative appeal 08-3956. (Dkt. No. 51 at 6.) Plaintiff is not required to allege every single fact in support of his claims.

1   The court sets forth the entire conversation, as related by petitioner in his appeal:

2   On 2/16/09 I went before Lt. McGuire regarding a staff complaint I filed against C/O Rosario for harassment[.] [D]uring the interview Lt. McGuire said "you wrote him up for 'excessive force' and it is not uncommon to suffer injuries during a take down," I responded "that complaint has been dealt with and I don't think we should talk about that." Lt. responded, "I talk about whatever I want, this is going to stop, I am seriously thinking about locking you up! What do you want from this, money? I responded, "I want him to stop hurting people, I have a right to file a complaint if I feel I've been done wrong, that is my purpose." The Lt. had me look in the title § 15 under use of restraints. The interview concluded after I told him what happened and that I had witnesses to my allegations, he said he would call them, Lt. McGuire went on to say his job was to protect the interest of his officers. Lt. McGuire concluded the interview and told me to return to my housing unit. Lt. McGuire told me as I walked out, "you will be leaving before my officer.

(Dkt. No. 55 at 11, 13.)

Plaintiff must show that his protected conduct was a "'substantial' or 'motivating' factor behind the defendant's conduct." Brodheim, 584 F.3d 1262, 1271 (9th Cir. 2009). To do so, plaintiff may rely on circumstantial evidence establishing a defendant's intent or motive. See Bruce v. Ylst, 351 F.3d 1283, 1288-89 (9th Cir. 2003) (concluding prisoner raised a triable issue of fact regarding official's retaliatory motive with evidence of suspect timing, stale evidence presented against the plaintiff, and statements suggesting retaliatory intent that the official made).

Liberally construed, defendant McGuire's alleged statement, "this is going to stop, I am seriously thinking about locking you up!" spoken in the context of plaintiff's staff complaint against defendant Rosario, raises an inference of retaliatory intent because it implies defendant McGuire was going to punish plaintiff because plaintiff filed a grievance against defendant Rosario. See Brodheim, 584 F.3d at 1269 (threat of discipline or transfer to another prison was sufficient to support retaliation claim). Defendant McGuire's closing statement, "you will be leaving before my officer," also supports such an inference.

Moreover, in his verified second amended complaint, plaintiff claims his response to defendant McGuire was "I want him [Rosario] to stop hurting people." (Dkt. No. 51 at 6.) On

15

a motion to dismiss, the court must accept plaintiff's statement as true. The allegation that defendant McGuire viewed plaintiff's version of his statement as a verbal threat against defendant Rosario, yet did not put plaintiff in handcuffs and have him escorted to ad seg immediately, but rather allowed plaintiff to return to his cell, supports the inference of retaliatory intent. Moreover, plaintiff alleges that after he returned to his cell, he was called "back to the program office" (id.), apparently the same program office where plaintiff met with defendant McGuire, and Sgt. Fowler asked about plaintiff's staff complaint, and then made reference to the Green wall. This allegation, taken as true at the pleading stage, supports an inference that defendant McGuire may have spoken with Sgt. Fowler, and that their intent was to get plaintiff to drop his grievance against defendant Rosario. But even if there was no communication between defendant McGuire and Sgt. Fowler, the delay alone supports an inference of retaliatory intent on the part of defendant McGuire.

Defendant McGuire argues that the fact that plaintiff was not placed into ad seg until after plaintiff made the alleged threat entitles defendant to dismissal based on plaintiff's failure to show there was no legitimate penological interest served by his placement in ad seg. However, taking plaintiff's statement as to the wording of the alleged threat as true, the court cannot find that there was a need for placement in ad seg, and thus cannot find, on a motion to dismiss, that there was a legitimate penological purpose for retaining plaintiff in ad seg pending transfer. Although defendant McGuire may be able to adduce evidence demonstrating he did not retaliate against plaintiff, plaintiff has provided sufficient factual allegations to state a cognizable retaliation claim against defendant McGuire. Thus, defendant McGuire is not entitled to dismissal based on plaintiff's retaliation claims.

////
////
////
////

V.  Qualified Immunity [6]

Determining whether an official is entitled to qualified immunity requires a two-part analysis.  See Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled on other grounds by Pearson v. Callahan, 555 U.S. 223 (2009).  First, a court must decide whether the facts alleged, when taken in the light most favorable to plaintiff, demonstrate that the defendant's conduct violated a statutory or constitutional right.  Saucier, 533 U.S. at 201-02.  Second, the court must determine whether the statutory or constitutional right alleged by plaintiff was "clearly established."  Id. at 201.  A right is "clearly established" for the purpose of qualified immunity if "'it would be clear to a reasonable [prison official] that his conduct was unlawful in the situation he confronted' . . . or whether the state of the law [at the time of the alleged violation] gave 'fair warning' to [him] that [his] conduct was unconstitutional."  Clement v. Gomez, 298 F.3d 898, 906 (9th Cir. 2002) (quoting Saucier, 533 U.S. at 202).

Although it is often beneficial to approach the two-part inquiry in the sequence prescribed above, it is not mandatory.  Pearson, 555 U.S. at 231-32.  A district court has "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first."  Id.  The court may grant defendants qualified immunity at any point the court answers either prong of the inquiry in the negative.  See e.g., Tibbetts v. Kulongoski, 567 F.3d 529, 536-39 (9th Cir. 2009) (bypassed the first prong and granted defendants qualified immunity because plaintiff's due process right was not clearly established at the time of alleged violation).

In this case, plaintiff's First Amendment right to file inmate grievances free from prison official retaliation was clearly established by 2008, the year the alleged violations began.  See Pratt, 65 F.3d at 806 ("[T]he prohibition against retaliatory punishment is clearly established law in the Ninth Circuit, for qualified immunity purposes.").  Thus, defendant McGuire is

---

[6] In light of the recommendations that plaintiff's retaliation claims against defendants Bickham, Cappel, Singh, and Haviland, be dismissed, the court only addresses defendants' qualified immunity argument as it applies to plaintiff's retaliation claims against defendant McGuire.

entitled to qualified immunity only if plaintiff has failed to allege facts that, if proven, would sufficiently demonstrate that defendant's conduct violated his First Amendment rights. See Saucier, 533 U.S. at 201.

Here, as discussed above, plaintiff's allegations of retaliation as to defendant McGuire meet the threshold requirement of stating a cognizable constitutional violation under section 1983. Liberally construed, plaintiff alleges that defendant McGuire threatened plaintiff with punishment if plaintiff refused to withdraw his complaint against defendant Rosario, and then mischaracterized plaintiff's alleged threat against defendant Rosario, in retaliation for plaintiff filing an excessive force complaint against Rosario. Assuming the truth of these allegations, defendant McGuire's actions could not be considered a reasonable mistake. Accordingly, it is recommended that defendant McGuire's motion to dismiss the second amended complaint based on qualified immunity be denied.

VI. Conclusion

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendant Easterling's motion to dismiss (dkt. no. 54) be granted, and plaintiff's excessive force claim be dismissed without prejudice;

2. The motion to dismiss (dkt. no. 54) filed by defendants Bickham, Cappel, Singh, and Haviland be granted; and plaintiff's retaliation claims be dismissed with prejudice;

3. Defendant McGuire's motion to dismiss plaintiff's retaliation claims be denied; and

4. Within fourteen days from any district court order adopting the instant findings and recommendations, defendant Rosario be directed to file an answer to plaintiff's excessive force claims, and defendants Rosario, Garcia, and McGuire be directed to file an answer to plaintiff's First Amendment retaliation claims.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen

days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED:  February 4, 2013

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

mitc3012.mtd