1
2
3
4
5
6
7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JOHN EDWARD MITCHELL,               No.  2:09-cv-3012 JAM KJN P

12              Plaintiff,

13        v.                             ORDER AND REVISED SCHEDULING
                                         ORDER
14   J. HAVILAND, et al.,

15              Defendants.

16

17   I.  Introduction

18        Plaintiff is a state prisoner proceeding without counsel.  This action is proceeding on

19   plaintiff's excessive force claims against defendant Rosario, and plaintiff's retaliation claims

20   against defendants Rosario, Garcia, and McGuire.  Defendants' motion for protective order and

21   plaintiff's motion for sanctions are pending, which the court addresses below.  Following

22   resolution of such motions, the undersigned issues a revised scheduling order.

23   II.  Defendants' Motion for Protective Order

24        By order filed January 23, 2014, defendants were directed to submit the two documents at

25   issue for *in camera* review.  The undersigned has reviewed the documents, and as set forth below,

26   finds that defendants should produce the documents to plaintiff.

27   ////

28   ////

                                         1

1      The Parties' Positions

2      Defendants seek a protective order preventing disclosure of two documents reflecting

3   investigative interviews:  (1) the confidential Supplement to "Appeal Inquiry" re:  Appeal Log

4   No. CSP-S008-03956, dated December 22, 2009; and (2) the Confidential Supplement to "Appeal

5   Inquiry" re:  Appeal Log No. CSP-S-08-03956, dated December 26, 2008.  Defendant argues that

6   the court should apply the official information privilege and find these documents are confidential

7   under California regulations and the California Penal Code, and that disclosure would threaten

8   inmate and officer safety.  Defendants contend that designating the documents confidential and

9   subject to a protective order is insufficient because plaintiff is unrepresented, and is serving a

10   prison sentence of 75 years to life, rendering the threat of contempt or sanctions meaningless.

11   Finally, defendants contend that plaintiff can obtain information regarding the incident through

12   interrogatories, requests for admissions, or depositions.

13      In opposition, plaintiff argues that because plaintiff is housed on a sensitive needs yard

14   and no longer housed in the general population, it is unlikely he will see general population

15   inmates again.  If the named inmates made statements adverse to plaintiff, plaintiff suggests the

16   court can direct the prison to add such inmates to plaintiff's enemy list so that they are not placed

17   with plaintiff on the same yard in the future.  Plaintiff notes that inmates Chatman and Killebrew

18   were present during the November 3, 2008 incident and have agreed to give plaintiff statements

19   and to serve as witnesses; therefore, plaintiff argues, their statements cannot be withheld from

20   plaintiff.  Plaintiff contends that Correctional Officer Freitas "blew the whistle" on defendants

21   Rosario and Garcia.  (ECF No. 108 at 2.)  Plaintiff provided a copy of his administrative appeal in

22   CSP-08-03956, through the February 16, 2009 second level decision, and argues that it supports

23   his objection to the protective order.  Plaintiff argues that "[a]t some point all nonparties and

24   parties to this suit know who made statements as to the matter and know what was said." (ECF

25   No. 108 at 3.)  Plaintiff states he would keep all confidential information protected from people

26   who are not involved in the suit, and would "follow all orders this court passes as to this

27   ////

28   ////

2

1   information and or will [accept] responsibility for failing to adhere to any order(s)."  (ECF No.

2   108 at 3.)[1]

3        In reply, defendants argue that plaintiff concedes he has other avenues to obtain

4   information about the incident from two inmate witnesses to the incident, and thus defendants

5   should not be compelled to produce confidential information.  Defendants argue that because

6   inmates frequently carry out acts for other inmates and retaliate against inmates who cooperate

7   with investigations, plaintiff's alleged lack of contact with these inmates has no bearing.

8        Standards

9        Federal common law recognizes a qualified privilege for official information.  Sanchez v.

10  City of Santa Ana, 936 F.2d 1027, 1033 (9th Cir. 1990).  Personnel files of government

11  employees are considered official information.  Id.  To determine whether the information sought

12  is privileged, courts must weigh the potential benefits of disclosure against the potential

13  disadvantages.  Id. at 1033-34.  That is, the privilege should ensure disclosure of discoverable

14  information without compromising the state's interest in protecting the privacy of law

15  enforcement officials and in ensuring the efficacy of its law enforcement system.  Kelly v. City of

16  San Jose, 114 F.R.D. 653, 662-63 (N.D. Cal. 1987).  "In the context of civil rights suits against

17  [corrections officials], this balancing approach should be 'moderately pre-weighted in favor of

18  disclosure.'"  Soto v. City of Concord, 162 F.R.D. 603, 613 (N.D. Cal. 1995) (quoting Kelly, 114

19  F.R.D. at 661).  Because "privileges operate in derogation of the truth finding process the law

20  places the burden of proving all elements essential to invoking any privilege on the party seeking

21  its benefits."  Kelly, 114 F.R.D. at 662; Fed. R. Civ. P. 26(b)(5).

22       Discussion

23       The documents that defendants seek to protect from plaintiff contain statements from

24  interviews of percipient witnesses to the incident at issue.  Specifically, defendants argue that

25  disclosing to plaintiff the content of interviews with inmates "could subject those interviewed to

26

27  [1]  Plaintiff also complains that defendants filed confidential information by appending documents from Walker v. Clement, 2:04-cv-1671 GEB KJM P.  (ECF No. 108 at 2.)  However, as noted by defendants, the documents provided from Walker v. Clement are not confidential and were filed in the public record on the court's electronic filing system, CM/ECF.

28

3

1   retaliation by [plaintiff] or other inmates, if they are dissatisfied with the content of those

2   interviews," presenting a "serious threat to the safety of those inmates." (ECF No. 102 at 8.)

3   Defendants contend that "disclosing records reflecting interviews with correctional staff could

4   also subject those officers to harassment or assault by inmates." (Id.) Defendants argue that the

5   court should issue a protective order to maintain the confidentiality of the interview memoranda.

6          In his opposition to the motion, plaintiff identifies the following witnesses to the alleged

7   excessive force incident:  inmates Killebrew and Chatman, and correctional officer T. Frietas.

8   (ECF No. 108 at 2.)  The two interview memoranda at issue here set forth statements taken from

9   plaintiff, defendant Rosario, inmates Killebrew and Chatman, and correctional officer T. Frietas.

10  The statements made by these percipient witnesses are highly relevant to the incident at issue, and

11  plaintiff is entitled to discover such statements and to cross-examine them as to their statements

12  should they be called as witnesses at trial.  Defendants' argument that disclosure of these

13  statements will present a serious threat to the inmates interviewed, or subject the correctional staff

14  to harassment or assault by inmates is speculative.  Defendants have not demonstrated an actual

15  threat posed by release of these statements by percipient witnesses.  Arguably these witnesses will

16  provide declarations for dispositive motions or present their testimony at trial.  Plaintiff is entitled

17  to discover percipient witness statements.  Thus, defendants' concerns do not outweigh plaintiff's

18  otherwise rather obvious right to discover this information.  Therefore, plaintiff is entitled to

19  discover the two documents submitted for *in camera* review.

20         III.  Motion for Sanctions

21         Plaintiff asks the court to use its inherent authority to impose sanctions on defendants for

22  the alleged destruction of two videotapes.  Plaintiff states that the "CDCR has for decades

23  engaged in all the forms of spoliation of evidence available to it with no consequences due to

24  oversight of procedures [sic]." (ECF No. 131 at 1.)  Plaintiff claims that defendants "destroyed or

25  spoliated [sic] the evidence in bad faith." (ECF No. 131 at 3.)  The remainder of plaintiff's filing

26  sets forth the authorities on which the court may impose sanctions, and the sanctions plaintiff

27  wishes the court to impose.  (ECF No. 131, *passim*.)  In his accompanying declarations, plaintiff

28  explains what he contends the August 5, 2008 videotape would show (ECF No. 131 at 6-7), how

4

1   on five separate occasions he asked correctional staff to preserve the videotape or sought to see

2   the videotape (ECF No. 131 at 9), and what the August 16, 2008 videotape would show (ECF No.

3   131 at 10).

4        Defendants argue that plaintiff's motion should be denied because plaintiff failed to

5   provide factual support for his claim that defendants destroyed either tape, or that either tape was

6   destroyed in bad faith; and that plaintiff's motion was untimely filed.[2]  To the extent plaintiff

7   seeks discovery sanctions, defendants contend that such sanctions are unavailable because the

8   court did not order defendants to produce the videotapes but rather denied plaintiff's motions to

9   compel.

10        Standards

11        As set forth in this court's January 23, 2014 order, because defendants were not ordered to

12   produce either the August 5, 2008 videotape, or the August 16, 2008 videotape, plaintiff's motion

13   for sanctions is governed by this court's inherent authority rather than Rule 37 of the Federal

14   Rules of Civil Procedure.

15        The imposition of sanctions under the court's inherent authority is discretionary.  Air

16   Separation, Inc. v. Underwriters at Lloyd's of London, 45 F.3d 288, 291 (9th Cir. 1995).  The

17   court has available to it a number of sanctions, and may (1) exclude evidence, (2) admit evidence

18   of the circumstances of the spoliation, (3) instruct the jury that it may infer that the spoiled

19   evidence would have been unfavorable to the responsible party, or even (4) dismiss claims.  See

20   Peschel v. City of Missoula, 664 F.Supp.2d 1137, 1141 (D. Mont. Oct.15, 2009) (citing Glover v.

21   BIC Corp., 6 F.3d 1318, 1329 (9th Cir. 1993).  The drastic sanction of dismissal, however, is

22   available only when "'a party has engaged deliberately in deceptive practices that undermine the

23   integrity of judicial proceedings.'"  Leon v. IDX Systems Corp., 464 F.3d 951, 958 (9th Cir.

24   2006) (quoting Anheuser–Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 348 (9th Cir.

---

25   [2]  By order filed January 23, 2014, plaintiff was granted thirty days in which to renew his motion
26   for sanctions.  Although plaintiff's renewed motion for sanctions was filed on February 26, 2014,
     plaintiff presented the motion to prison officials for mailing on February 13, 2014.  (ECF No. 131
27   at 11.)  Thus, under the mailbox rule, plaintiff's motion was timely filed.  See Douglas
     v. Noelle, 567 F.3d 1103, 1109 (9th Cir. 2009) ("[T]he Houston mailbox rule applies to § 1983
28   complaints filed by pro se prisoners.")

1   1995)).  In other words, the court must make a finding of willfulness, fault, or bad faith before

2   dismissing claims.  Id.  In determining whether dismissal is appropriate, the court should consider

3   "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its

4   dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring

5   disposition of cases on their merits; and (5) the availability of less drastic sanctions."  Id.

6   (quotations omitted).

7        Appropriate sanctions short of dismissal may include exclusion of the disputed evidence,

8   an adverse inference jury instruction, or monetary sanctions.  Akiona v. United States, 938 F.2d

9   158 (9th Cir. 1991); Leon, 464 F.3d at 961.  Before issuing sanctions, however, the court must

10  find that the offending party had notice that the spoliated evidence was potentially relevant to the

11  litigation.  Leon, 464 F.3d at 959.  "A party does not engage in spoliation when, without notice of

12  the evidence's potential relevance, it destroys the evidence according to its policy or in the normal

13  course of its business."  United States v. $40,955.00 in U.S. Currency, 554 F.3d 752, 758 (9th

14  Cir. 2009).

15       Before imposing an adverse inference instruction, a court must find:  (1) that the

16  spoliating party had an obligation to preserve the evidence; (2) that the evidence was spoliated

17  with "a culpable state of mind"; and (3) that the evidence was relevant to the other party's claim,

18  meaning that "a reasonable trier of fact could find that it would support that claim."  In re

19  Napster, Inc. Copyright Litig., 462 F.Supp.2d 1060, 1078 (N.D. Cal. 2006) (citation omitted).  In

20  order to exclude evidence, the court must find "willfulness or fault by the offending party."

21  Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp., 982 F.2d 363, 368 n.2 (9th Cir. 1992)

22  (citation omitted).  To impose either sanction the court need not find that the spoliating party

23  acted in bad faith.  Id.; Glover, 6 F.3d at 1329.  "However, a party's motive or degree of fault in

24  destroying evidence is relevant to what sanction, if any, is imposed."  In re Napster, Inc., 462

25  F.Supp.2d 1066-67.

26       Discussion

27       As argued by defendants, plaintiff provided no factual support for his claims that

28  defendants destroyed either videotape or that the loss of the August 16, 2008 videotape was a

1  result of defendants acting in bad faith.  Although plaintiff contends that he persistently sought

2  review of the August 5, 2008 videotape, and asked that such tape be preserved, such requests,

3  standing alone, do not prove that a videotape of the August 5, 2008 incident existed.  Defendants

4  have provided evidence that the August 5, 2008 videotape does not exist.  (ECF No. 92 at 7; 95-4

5  at 5-7.)  As the court earlier ruled, defendants cannot produce a videotape that does not exist.

6  (ECF No. 100 at 10.)  It follows that defendants cannot be sanctioned for failing to produce a

7  videotape that does not exist.  Plaintiff's motion for sanctions related to the August 5, 2008

8  videotape is denied.

9       By contrast, the August 16, 2008 videotape did exist.  The "Report of Findings -- Inmate

10  Interview" confirms that the use of force interview and plaintiff's injuries were videotaped on

11  August 16, 2008.[3]  (ECF No. 87 at 109-10.)  Defendants provided plaintiff with the declaration of

12  litigation coordinator S. Cervantes who set forth the efforts undertaken to locate the missing

13  August 16, 2008 videotape.  (ECF No. 103 at 7-10.)  Multiple contacts with prison staff were

14  made, including with the parties involved who still work at CSP-Solano, and searches were

15  conducted of the Facility A offices of the Captain, Associate Warden, and Operations; the Use of

16  Force Coordinator's log; and the Investigative Services Unit archives.  (ECF No. 113 at 9.)

17  Despite these multiple contacts and searches, the August 16, 2008 videotape was not located.

18  (ECF No. 113 at 9-10.)

19       As conceded by defendants, prison officials failed to secure the August 16, 2008

20  videotape with plaintiff's use of force incident package.  However, in his motion for sanctions,

21  plaintiff did not provide any factual support or evidence to demonstrate that defendants willfully

---

22  [3]  Defendants  responded to plaintiff's request for production by stating that "there are no
23  responsive items in defendants' possession, custody, or control that [were] responsive to this
   request because the video tape in question no longer exists."  (ECF No. 113 at 6.)  Defendants
24  provided plaintiff with a declaration from Litigation Coordinator S. Cervantes at CSP-Solano.  S.
25  Cervantes explained that reference to the August 16, 2008 video was noted in supplemental pages
   to the August 5, 2008 incident report because plaintiff did not indicate he wanted to file an
26  excessive force complaint until August 16, 2008.  (ECF No. 113 at 8.)  Sergeant Burris
   videotaped plaintiff, while Sgt. Henry asked the interview questions.  The August 16, 2008 video
27  was not with the August 5, 2008 incident report.  (ECF No. 113 at 8.)  No tape of an interview on
   August 16, 2008, was found, despite contacting four prison officials involved in the incident
28  report, and multiple searches. (ECF No. 113 at 8-9.)

1   or intentionally destroyed or lost the August 16, 2008 videotape in bad faith.  Plaintiff previously

2   argued that he is prejudiced by the missing videotape because he is deprived of proof of his

3   injuries.  (ECF No. 113 at 2-3.)  However, plaintiff may testify as to the extent of his injuries.

4   Moreover, as noted by defendants (ECF No. 119 at 6), plaintiff may introduce the testimony of

5   Sergeants Henry and Burris, who observed plaintiff during the August 16, 2008 interview (ECF

6   No. 113 at 2); the written report of the sergeants' observations during the August 16, 2008

7   interview; the medical records documenting plaintiff's injuries; and the testimony of witnesses or

8   those involved in the August 5, 2008 use of force incident.  Also, through discovery responses,

9   defendants provided plaintiff with evidentiary support of his injuries.  (ECF No. 119 at 6.)

10         Because plaintiff failed to adduce facts or evidence demonstrating that the August 16,

11   2008 was lost or destroyed by defendants in bad faith, plaintiff's motion for sanctions is denied.

12   IV.  Revised Scheduling Order

13         Discovery is closed.  The dispositive motions deadline was vacated to permit resolution of

14   the pending motions and to facilitate the settlement conference held on March 25, 2014.  (ECF

15   No. 111.)  Thus, the pretrial motions deadline is now set for June 13, 2014.  The court is not

16   inclined to further extend this deadline.

17   V.  Conclusion

18         Accordingly, IT IS HEREBY ORDERED that:

19         1. Defendants' motion for protective order (ECF No. 102) is denied.

20         2. Within twenty-one days, defendants shall produce to plaintiff copies of the confidential

21   Supplement to "Appeal Inquiry" re:  Appeal Log No. CSP-S008-03956, dated December 22,

22   2009; and the Confidential Supplement to "Appeal Inquiry" re:  Appeal Log No. CSP-S-08-

23   03956, dated December 26, 2008.  Plaintiff will not disclose those documents or the contents of

24   them to anyone not involved in this litigation.

25         3. Plaintiff's motion for sanctions (ECF No. 131) is denied.

26         4. All pretrial motions, except motions to compel discovery, shall be filed on or before

27   June 13, 2014.  Motions shall be briefed in accordance with paragraph 8 of this court's order filed

28   December 1, 2010.

1        5.  Pretrial conference and trial dates will be set, as appropriate, following adjudication of

2   any dispositive motion, or the expiration of time for filing such a motion.

3    Dated:  April 7, 2014

4

5   /mitc3012.icr

                                         KENDALL J. NEWMAN
                                         UNITED STATES MAGISTRATE JUDGE